HAMMER *et al.*, Respondents, v. BREIDENBACH, Appellant.

1. Where an agreement contains several stipulations on both sides, some of them of such a character that the damages resulting from a breach thereof could be easily estimated, and others such that breaches of them would be attended with losses difficult to be estimated, the sum specified in the agreement to be paid for the breach of any stipulation will be construed to be a penalty and not liquidated damages.
2. A., the proprietor of a brewery, entered into a contract with B. by which it was agreed that B. should be employed as foreman of said brewery ; that he would guaranty " to furnish an excellent article of beer and lager beer ;" that he would exert himself to sell said beer and lager beer to good customers, consult A., the proprietor, concerning all matters of importance pertaining to the business and the sale of the beer and obtain his consent thereto ; that he should receive a salary of one thousand dollars per year, payable at certain times ; that he would be accountable for every damage which might result from his negligence or careless management. It was further stipulated as follows : " Whosoever of the two contracting parties breaks this contract without sufficient cause, and which is contained in said contract, has to pay to the other party the sum of five hundred dollars in cash." *Held,* that the sum thus stipulated to be paid should be construed to be a penalty and not as liquidated damages ; that the engagement of B. to furnish an excellent article of beer implied an obligation on the part of A. to furnish him with such materials and such a cellar or cave as would be necessary to the production of the desired quality of beer ; that B. would be justified in abandoning the contract if A. should not fulfil these obligations or should furnish a cave in which it would be dangerous for B. to go as required by the contract.

*Appeal from St. Louis Court of Common Pleas.*

The facts sufficiently appear in the opinion of the court.

*McClellan, Moody & Hillyer*, for appellant.

I. The five hundred dollars are not a conclusive measure of damages. Plaintiffs could recover only such amount, short of five hundred dollars, as the proof shows they were damaged. By the terms of the contract he was bound to make good beer. It was necessary for defendant to frequent the cave ; his life was endangered by entering it. Plaintiffs had the power to remedy this. They were bound to do this. They made no effort. Defendant had a good and sufficient cause for leaving. The court erred in excluding the proof as

to the unfitness of the cave. If defendant had remained he would have been liable to suits for not making good beer. (See Sedgw. on Dam. 204, 210.)

*Jecko*, for respondents.

NAPTON, Judge, delivered the opinion of the court.

This suit is brought to recover the penalty of five hundred dollars, for the breach of contract. The contract is as follows: " Agreement between Charles and Philip Hammer & Co. of the one part, and Henry Breidenbach of the other part, both parties of the city of St. Louis, county of St. Louis, state of Missouri. 1st. The proprietors of the Bavarian brewery of St. Louis—Ch. and Ph. Hammer & Co.—engage, on this date, Mr. Henry Breidenbach as foreman of said brewery. 2d. Mr. Henry Breidenbach obligates himself to conduct the said ' brewery business' conscientiously and with the best ability, and guarantees to furnish an excellent article of ' beer and lager beer.' 3d. Mr. Henry Breidenbach also binds himself to exert himself to sell said ' beer and lager beer' to good customers. 4th. Mr. Henry Breidenbach is bound to consult the proprietors of the brewery concerning all matters of importance pertaining to the business and the sale of the beer and to obtain their consent thereto. 5th. Mr. Henry Breidenbach will receive in consideration of his services a salary of one thousand dollars per annum. 6th. This salary is to be paid as follows: he shall receive during the first six months of every year only what is absolutely necessary to defray his household expenses (say about thirty to forty dollars) per month; for the remainder of the year, the balance will be paid in monthly rates. 7th. Mr. Henry Breidenbach makes himself accountable for every damage which may result to the business from negligence or careless management on his part in conducting the same. 8th. This contract takes effect from this date, and will expire on the first day of May, 1859. 9th. Whosoever of the two contracting parties breaks this contract without sufficient cause, and which is contained in said contract, has to pay to the other

party the sum of five hundred dollars in cash.    10th. In witness whereof both parties have hereto signed their names. St. Louis, this 1st day of January, 1858."

The breach alleged is, that defendant did not conduct the said brewery, as foreman, up to the first day of May, 1859, but quit the service of plaintiffs, as foreman, against their will and consent, on the 15th August, 1858.    They therefore claim the payment of the five hundred dollars.

On the trial the defendant proved that the cave or cellar furnished by plaintiffs for storing and fermenting the beer was unsafe ; that its roof was the natural earth, which occasionally and frequently fell in such quantities as to render it dangerous ; that it was defendant's duty to be daily employed in the cellar superintending the storing and drawing off the beer.    In addition to this testimony, the defendant offered to prove that the condition of the cave was such that a good article of beer could not be made in it, but this evidence was excluded.    The plaintiffs, in rebuttal, proved that they had said to defendant the day he left, that if he would remain he need not go into the cave at all ; that plaintiffs never ordered defendant to work in said cave whilst in a dangerous condition.

The court instructed the jury as follows : " The condition of the cave is no defence to this suit, unless the jury shall believe that the cave was in a dangerous condition at the time the defendant left, and that whilst in a dangerous condition the plaintiffs required the defendant to work in said cave."    The verdict was for the penalty.

In the cases of Moore & Hunt v. Platte County, 8 Mo. 469, and Gower v. Saltmarsh, 11 Mo. 273, the rule was laid down by this court, that, where an agreement contained several stipulations of various degrees of importance, and the breaches of some would be attended with losses difficult to be estimated, and in others the damage would be of easy calculation, the sum specified in the agreement as the amount of damages for the breach of any stipulation will be construed as a penalty and not as liquidated damages, even

although the parties have in express terms declared the contrary.

The rule was originally laid down in the English case of Kemble v. Farren, 6 Bingh. 141. There the defendant had agreed to act as principal comedian at Covent Garden, for which the plaintiff was to pay him £3 6s. and 8d. every night the theatre was opened, and if either party failed to fulfil his agreement, or any part thereof, the party failing was to pay £1000, which was *declared to be liquidated damages and not a penalty*. The court held the agreed damages to be a penalty, because they extended not only to those breaches which were of uncertain injury, but to every trivial breach, the damages for which could be easily ascertained. The authority of this case was recognized and followed in Horner v. Plurtiff, 9 Mees. & Welsb. 678.

When there is but a single stipulation in a contract, and the damages for its breach are plainly of such an uncertain character as to render it almost impracticable to estimate them by any fixed rule, the contract has been literally enforced. As, if a proprietor of a newspaper should sell out his establishment with an agreement not to set up a rival press within the same town or within a designated period, and the parties should beforehand determine the damages which the breach of such an agreement would occasion, the amount thus agreed upon would be binding. And the same principle would apply when there was more than one stipulation, if they were all of the same character. But where a slight deviation as to time or amount is visited with the same penalty as a breach of the most important terms of a contract, it is evident that the parties do not mean what they say when they call such penalties stipulated damages. And, as the object of the courts is to ascertain and act upon the real intention of the parties, it is necessary, in order to carry out such intentions, to disregard their language.

In the present case, however, no such embarrassment is created, for the contract not only provides for the performance of several things on both sides, some of which are of a

character where a breach could be easily estimated, but in terms declares the five hundred dollars to be a penalty, to be paid in the event of a breach by either party.   There was no ground, therefore, for restricting the jury to this sum in their estimate of the damages sustained.

We have been unable to see upon what grounds the evidence offered by the defendant was excluded.  He was under obligations by his contract to furnish an excellent article of " beer and lager beer," and such an engagement on his part necessarily implied an obligation on the part of the proprietors to furnish him with such materials and such a cellar or cave as would be essential to the production of the desired quality of beer.   To say that he could go on and furnish an inferior article, and protect himself against his breach of contract in so doing, by setting up the deficiency or insufficiency of materials furnished, is to throw out of view all consideration of the value of his reputation as a skilful brewer, which may have been and most probably was the principal inducement to his employment, and which to him may be more valuable than his salary.

We are not satisfied with the instruction of the court. How can a jury ascertain the precise time when a cave is dangerous and when not ?   If dangerous at all, from a liability to fall in, is it not necessarily so at all times whilst it continues in that condition ?   Unless, indeed, the character of the weather, or some other such circumstance, may influence the degree of risk, about which there was no testimony. Nor do we perceive how the assent of the proprietors to the defendant's entire absence from the cave, or his omission to enter it except when it was entirely safe, can change the relative rights and duties of the parties to this contract.   It appeared in evidence that the defendant, in order to discharge his duties under the agreement, had necessarily to enter this cave every day and at all times of the day.   It was totally irreconcilable with this understanding of his duties, that he was at liberty to neglect them altogether or employ some substitute.   It is as though a ship captain should agree to

navigate a vessel from one point to another, and upon examining the vessel should ascertain that she was unseaworthy, and that his life and those of his crew would be endangered by undertaking the voyage. Would it be any answer to such a defence to an action for a breach of this contract on the part of the master, that the owners allowed him to employ a substitute, and did not require him to go on board the vessel if in his opinion she was unseaworthy ? Such a permission can only be regarded as substantially a discharge from the engagement.

The judgment is reversed and the cause remanded. The other judges concur.