ST. LOUIS COLONIZATION ASSOCIATION, Respondent, *v.* JOHN M. HENNESSY, Appellant.

March 14, 1882.

1. A stockholder is not estopped by his subscription to deny the lawful existence of a corporation prohibited by the state constitution.

2. An association for the purpose of establishing colonies of persons of a particular religious belief, is not necessarily a religious corporation, and is not prohibited by the state constitution.

3. An assessment upon stock authorized to be made by a board of managers, may, in the absence of a regulation as to the number necessary to constitute a quorum, be made by a majority of the board.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Affirmed.*

A. R. TAYLOR, for the appellant.

E. J. O'BRIEN, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This was an action by a corporation against one of its
stockholders for calls made by its board of management
upon his shares of stock. It was appealed from a justice
of the peace to the circuit court, and there the plaintiff had
a judgment.

Two objections are made by the defendant against this
judgment. The first is,. that this is a religious corporation
organized for the purpose of holding lands other than for
church edifices, parsonages, and cemeteries, and that it is
hence prohibited by section 8 of the Bill of Rights.

Can this question be raised at all in this action? The
general rule is, that a person who enters into a contract with
a corporation is, when sued upon the contract, estopped to
deny that the plaintiff is a corporation, It equally holds
that one who has subscribed to the stock of a corporation
is, in general, estopped by that act from denying the legality
of the existence of the corporation when sued by it to en-
force his contract of subscription. *Ohio, etc., R. Co.* v. *Mc-
Pherson*, 35 Mo. 13. But we are disposed to concede that
this principle applies only where the corporation is one
which *may* lawfully exist, or where the rights of creditors
intervene. It is believed that all the cases where it is held
that a stockholder, proceeded against to enforce his liability
as such, is estopped from denying the lawful existence of
the corporation, fall within one of these two classes. They
are generally cases where the proceeding is brought by, or
on behalf of, creditors of the corporation, and where the
stockholder attempts to evade his liability by setting up de-
fects or irregularities in the organization of the corpora-
tion ; and the courts justly refuse to permit him to do this,

on the ground that a man will not be heard to set up a wrong in which he himself has participated in order to avoid a meritorious liability.    See Thomp. on Stockholders, sect. 407, and cases cited.

It must be remembered that such a suit is essentially a suit upon a contract; that this contract is the constating instrument of the corporation — in this case, its articles of association.    It logically follows that when this contract is put in evidence in support of the plaintiff's claim, if it is seen by the terms of the contract itself that it is an unlawful contract, the court will refuse to enforce it, whatever may be the state of the pleadings or the disposition of the parties.    The reason is, that a court of justice will not lend itself to a violation of law — will not put itself in contempt of its sovereign, although both parties to a suit may ask to do so.

We might illustrate this rule by supposing a strong case. Keeping a gambling-house is a felony in this state.    Suppose that a suit were brought by a corporation against one of its shareholders for calls, and that on the trial of the action the articles of association offered in evidence should show that the corporation was organized for the purpose of owning and running a gambling-house, — we apprehend that no court would allow the suit to proceed further, no matter what might be the state of the pleadings, or the disposition of the parties.

If, then, this corporation is a corporation prohibited by the constitution of this state, this suit is a suit brought to enforce an unlawful contract, and the plaintiff must be repelled.

But is it an unlawful corporation?    It is supposed to be within the prohibition of the eighth clause of the Bill of Rights, which reads as follows:  "No religious corporation can be established in this state, except such as may be created under a general law for the purpose only of

holding title to such real estate as may be prescribed by law for church edifices, parsonages, and cemeteries.'' Const. of Mo., Art I., sect. 8.

Is this, then, a religious corporation? We do not think it is. It is organized for the purpose, as expressed in its articles of association, '' of raising funds for the establishment of Catholic colonies.'' This object, as the articles further detail, is to be carried out by the buying of lands, and the selling of them to persons of the Roman Catholic faith, in quantities not to exceed one hundred and sixty acres to each purchaser. The corporation has a joint stock, and may declare dividends, which, however, are not to exceed six per cent per annum on the capital stock. No provision is made for the purchase and holding of land for any religious purpose, except the following: '' In every town site of this association, two squares, not less than three hundred by four hundred feet, shall be marked off and donated in trust to the bishop of the diocese in which the lands shall be situated, for Catholic church purposes, namely, for Catholic churches, schools, and priest's residence.'' It is, however, provided, that '' all moneys derived from the sale of town lots shall, after the necessary expenses shall have been deducted and the dividends shall have been paid, be applied to the purchase of additional lands for the association, and no funds of this association shall be used for any other purpose than to advance the cause of Catholic colonization.'' It is apparent from these provisions that the primary object of this association is colonization, and not the propagation of religion. It is true that the scheme of colonization is confined to persons of a particular religious faith; but there is certainly nothing in the section of the Bill of Rights above quoted, nor in any law of this state with which we are acquainted, which prohibits persons of a particular religious faith from settling together so that they may be able

to have a church in which to exercise the offices of their faith and a school in which to educate their children in the faith of their fathers, if they shall choose to do so.

So far as we know, we have no statute in this state which authorizes the formation of corporations, the primary object of which is the purchase and holding or selling of lands; but our statute relating to manufacturing and business corporations, after enumerating several different objects for which corporations may be organized, contains the following general provision: "Eleventh, for any other purpose intended for pecuniary profit or gain, not otherwise especially provided for, and not inconsistent with the constitution and laws of this state." Rev. Stats., sect. 929. The English statutes of mortmain have not been re-enacted in this state, except so far as they are embraced in the above provision of the Bill of Rights; nor have the American courts, so far as we know, declared the policy of those statutes to be a part of the common law of this country. Green's Brice's Ultra Vires (2d ed.), 11, note. With the general statutory authorization last quoted, in force, and in the absence of any prohibitory legislation, we perceive no reason for holding that this is an unlawful corporation. Possibly it may, by a diversion of its funds from its apparent purposes, become an unlawful corporation; but should this take place, it will be open to the state to proceed against it directly to have its franchises forfeited for misuser. The amount in controversy in this case is small — not sufficient, we presume, to justify the parties in compensating counsel for the time and labor which they would necessarily have to expend in giving us the aid upon this question which we ought to have before passing upon it, and especially before holding that this corporation is an unlawful organization. The question is of great importance, not only to this plaintiff, but to other bodies of like character, which, no doubt, exist. It ought not to be decided, except upon the fullest consideration, and

then its decision ought not to be left to a court of intermediate jurisdiction.   We have not had the aid from counsel which we could wish upon a question so important; and if the defendant desires to obtain an authoritative decision of the question, this is a case which he can take to the supreme court.

2. The only other substantial question raised by this record is this: The articles of this corporation provide that "the board [of management] shall, at any meeting, levy such assessments as they shall deem necessary, provided no assessment exceed ten per cent on the stock subscribed." Some of the assessments here sued on were not made by the concurrence of all the members of the board, but by a *majority* of the board; and the defendant insists that there is no authority for a majority so to act.   We take a different view.   Neither the articles nor the by-laws of this corporation prescribe what number of the managers shall constitute a quorum.   We think that, in the absence of any regulation in the governing instrument of a corporation as to what number of its directors or managers shall constitute a quorum to do a given act, which such instrument authorizes the board to do, the act is well done if done by a majority of the board.   *Edgerly* v. *Emerson*, 23 N. H. 555.   See also *Cram* v. *Bangor House*, 12 Me. 359.

The judgment must be affirmed    All the judges concur.