YORK PARK BUILDING ASSOCIATION v. JOHN W. BARNES.

FILED MARCH 21, 1894. No. 4946.

1. **Failure to Instruct Jury:** New Trial. It is the duty of the trial judge to instruct the jury upon the law of the case, whether requested by counsel to do so or not, and where the

judge has failed to instruct the jury, and it is apparent from the record that the jury probably took a wrong view of the law, a new trial will be awarded.

2. Corporations. A corporation which has for its object the purchase of land and the construction of houses thereon (the funds being realized from the capital stock paid in by subscribers in installments), and finally the allotment of the lots and houses among the stockholders in satisfaction of their stock, is one organized for the purpose of carrying on a lawful business and authorized by the general incorporation law.

3. Pleading: CONTRACTS. In pleading a contract which need not by common law be in writing, but where a writing is required by a positive statute, it is not necessary to plead that the contract was written, at least where no objection is made by motion to the certainty of the pleading.

4. Corporations: SUBSCRIPTIONS: ESTOPPEL. One to whom stock in a corporation is issued, who pays assessments on such stock, acts as an officer of the corporation and takes part in its management, is estopped to deny his subscription.

5. Contracts: SUBSCRIPTIONS: STOCK. An agreement made between promoters of a corporation and a subscriber to its stock, that such subscriber is to have the stock for the sake of the influence of his name, and that he will not be required to pay his subscription therefor, is void, and the corporation may enforce payment of such subscription, notwithstanding such agreement.

ERROR from the district court of York county. Tried below before COCHRAN, J.

*Sedgwick & Power*, for plaintiff in error.

*George B. France, contra.*

IRVINE, C.

This was an action by the plaintiff in error against the defendant in error to recover on a stock subscription. In instructing the jury the court in the first place stated at considerable length the issues raised by the pleadings and submitted the pleadings to the jury with the instructions. The court next stated to the jury that the plaintiff, in or-

der to recover, must establish the material allegations of its petition by a preponderance of evidence. Then an instruction was given as to what constituted a preponderance of evidence, and this was followed by the usual instruction submitting to the jury the credibility of witnesses and the weight to be attached to evidence. No other instructions were given. One of the assignments in the motion for a new trial and the petition in error is that the court erred in not instructing the jury as to the law of the case.

In *Sandwich Mfg. Co. v. Shiley*, 15 Neb., 109, it was said: "It is undoubtedly the duty of the judge presiding at a trial to instruct the jury upon the law of the case which is to be observed by them, and should a case arise in which it shall appear from the record that the jury has taken a wrong view of the law applicable to the case, and where the judge has failed to instruct them, whether requested by counsel or not, this court would not hesitate to grant a new trial." The same principle was substantially announced in *Aultman v. Martin*, 37 Neb., 827. An entire failure to instruct the jury in regard to the law of the case is very different from an omission to instruct in regard to some particular phase of the case or some particular question arising upon the trial. In the latter case a proper instruction upon the subject must be requested before error can be predicated upon a failure to instruct; but the law imposes upon the court the duty of stating to the jury the law applicable to the case, and an entire failure to state the law to the jury has the effect of submitting to the jury the determination not only of facts but of the law. In this case there was a total failure to instruct the jury upon the law of the case. This would not be prejudicially erroneous if it were apparent that the jury had come to a correct conclusion. (*Sandwich Mfg. Co. v. Shiley, supra.*) But the error is prejudicial if it is apparent that the jury has taken a wrong view of the law. We must, therefore, examine the record in order to determine that question.

The petition alleges the corporate existence of the plaintiff since August 6, 1887, and the articles of incorporation and by-laws are made a part of the petition.   It then alleges that on the 3d day of August, 1887, the entire amount of capital stock was subscribed; that the defendant subscribed for one share thereof and paid upon said share the sum of $108.65.   The petition then alleges that further payments to the amount of $190 are due and unpaid, and that in addition thereto the defendant is indebted upon his share for certain fines, interest, and penalties.

The answer is quite long.   In effect, it denies the corporate existence of the plaintiff; denies the power of the plaintiff to make assessments or impose fines; it alleges that, at the time of the pretended incorporation of the plaintiff, its officers and stockholders represented to the defendant that they would put one share of stock in his name for the sake of his influence, and that he should not at any time be required to pay therefor; that it was represented to him that street cars should be run through the property owned by plaintiff near defendant's residence, and that commodious and beautiful residences would be built near defendant's property, and that such promises had not been fulfilled.   The defendant further alleged that he had acted as president of such pretended incorporation for one year, and that his services in that behalf were worth $1,000, for which he asks judgment.   It was further averred that defendant had never at any time subscribed for stock of the plaintiff, but simply permitted, under the circumstances stated, stock to be placed in his name.   It was also averred that sufficient stock was never subscribed to complete the organization of the plaintiff.   The action was originally begun in the county court, and the answer asserts that that court had no jurisdiction of the subject-matter.

The plaintiff, in reply, in effect denies the allegations of new matter in the answer, and in addition to that denial avers that the defendant had acted as a stockholder in the

corporation and acted as president thereof; had paid for some time his assessments and dues, and as president had executed evidences of indebtedness on behalf of the corporation, and generally held himself out as a stockholder. The reply further denies that as president or other officer of the corporation the defendant was entitled to any salary for his services.

The defendant asserts that the petition does not state a cause of action. If this were so, of course the judgment in favor of the defendant would not be reversed; but we think a cause of action is stated. Upon this point the defendant urges illegality of the incorporation. There is good authority for holding that one who subscribes for stock in a corporation, acts as an officer thereof, and takes part in its management, cannot dispute the validity of the corporation. (*Phœnix Warehousing Co. v. Badger*, 67 N. Y., 294.) But the question raised in argument upon this point does not relate to any irregularity in the proceedings, but is directed to the point that the corporation was not for a legal object. While the name adopted by the corporation is one of the distinctive terms used in the act relating to building and loan associations (Session Laws, 1891, ch. 14), and while the use of such a name is forbidden to corporations not complying with that act, that prohibition applies only to corporations organized after the adoption of the act of 1891. This corporation was organized in 1887. It is not a building association, or building and loan association, as those terms are used in the recent statutes. Its objects, as stated in its articles of incorporation, are to buy and sell real estate, to purchase or erect buildings and to rent or sell the same, to sell its property, to borrow money and to give mortgages to secure the payment thereof. A further inspection of the articles shows that the specific purpose was, in effect, a scheme of co-operation whereby the stockholders, by obtaining the rights and assuming the duties of a corporation, obtained for that corporation a tract

of land subdivided into lots, erected houses upon these lots, provided for the payment of the stock in monthly installments, and finally provided for the allotment of the lots and lands among the stockholders in discharge and satisfaction of the stock.   The general corporation laws, chapter 16, Compiled Statutes, section 123, permit any number of persons to become incorporated for the transaction of any lawful business.   The business as outlined by the articles of incorporation is certainly lawful, and we cannot see any force to the argument that the formation of the corporation was not authorized by the law of the state.

It is next asserted that the petition does not allege any subscription in writing to the stock.   By the more recent authorities a subscription in writing is not necessary (Cook, Stock & Stockholders, sec. 52); but if a writing were required, it would be only because of the statute of frauds and not upon any principle of the common law.   In such a case it need not be pleaded that the agreement was in writing, at least when the question is raised after verdict and judgment. (*Schmid v. Schmid*, 37 Neb., 629.)

It is next asserted that the petition does not specifically allege that the entire capital stock had been subscribed. The petition does allege that on the 3d day of August, 1887, the entire amount of the capital stock required by the articles of organization was subscribed.   This is a sufcient averment, at least, unless objection be made by motion as to its certainty.

Possibly the denial of the jurisdiction of the county court demands consideration.   This contention seems to be based upon the proposition that the action relates to real estate.   Upon this subject the law only denies to the county court jurisdiction in actions upon contracts for the sale of real estate, in matters wherein the title or boundaries of land may be disputed, and to order or decree the sale or partition of real estate. (Comp. Stats., ch. 20, sec. 2.)   This case does not fall within any of these classes.

The mere fact that the corporation had for its object transactions in real estate makes the subscription for its stock none the less personal in its character.

Subscription to the stock was denied. There was evidence tending to show that the original subscription book had been destroyed by fire and it did not appear that the defendant ever had in his manual possession a certificate of stock, but it did appear that he authorized a share to be issued to him; that a certificate had actually been issued; that only stockholders were eligible to office; that he was, upon the organization of the company, elected its president and served for a long time in that capacity, and that he had paid a number of installments upon a share of stock. This was sufficient to charge him as a subscriber, and he was estopped to deny his subscription. (*Sanger v. Upton*, 91 U. S., 56.)

There was considerable evidence upon the issue raised by the answer as to the agreement made by promoters of the corporation that the defendant should never be required to pay. Such an agreement is void. To permit its enforcement would operate as a fraud upon the other stockholders subscribing upon the faith of the defendant's subscription, as well as upon the creditors of the corporation. The following cases, while not all precisely in point, firmly establish this principle: *Downie v. White*, 12 Wis., 195; *Bates v. Lewis*, 3 O. St., 459; *Wetherbee v. Baker*, 35 N. J. Eq., 501; *Phœnix Warehousing Co. v. Badger*, 67 N. Y., 294; *Mann v. Cooke*, 20 Conn., 178; *Upton v. Tribilcock*, 91 U. S., 45; *Connecticut & P. R. R. Co. v. Bailey*, 24 Vt., 465.

All these issues were stated to the jury in form of an abstract of the pleadings without stating any of the principles of law governing their determination. Some of them, as a matter of law, should have been withdrawn from the jury; all of them involved questions of law which under the charge the jury was permitted to deter-

mine.   Upon a review of the whole case we are satisfied not only that the jury may have taken a wrong view of the law, but that in all probability it did so.   Under these circumstances the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.