# SYLVESTER WATTS SMYTH REALTY COMPANY v. AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

## Division One, March 14, 1922.

1. **CORPORATIONS:** Legislative Power to Create: Constitutional Limitations. Subject to the limitations of the Constitution the Legislature has plenary power to create corporations and prescribe the business in which they may engage. The only limitations on its power in this respect found in the Constitution are that corporations cannot be created by special law (Section 2, Article XII) nor without the payment of certain incorporation fees (Section 21, Article X) and that no religious corporation can be established, except for the purposes only of holding the title to real estate for church edifices, parsonages and cemeteries (Section 8, Article II).

2. ———: Statutory Authorization: Real Estate Corporations. The buying, selling and dealing in real estate and the purchasing, owning, renting, selling and exchanging buildings for profit or gain are lawful and usual business pursuits, which are comprehended within the broad and sweeping terms of Subdivision Eleventh of Section 10151, Revised Statutes 1919, for which corporations may be created.

Realty Company v. Surety Company.

3.   ———:   ———:   ———:   Constitution:   Holding Real Estate.   The provision of Section 7, Article XII of the Constitution that no corporation shall "hold any real estate for any period longer than six years, except such as may be necessary and proper for carrying on its legitimate business" taken in connection with Subdivision Eleventh of Section 10151, Revised Statutes 1919, which excepts from its authorization the creation of corporations for purposes "inconsistent with the Constitution and laws of this State," does not prohibit the creation of corporations to buy, sell, deal in and rent real estate and buildings, inasmuch as it does not prescribe or limit the purposes for which corporations may be created or even purport to deal with that subject.   Corporations created for such purposes could hold real estate indefinitely and such holding would be necessary and proper for carrying on their legitimate business, and the constitutional limitation would have no application.

4.   ———:   ———:   ———:   Public Policy.   The only public policy manifested by the organic and statutory law of this State with respect to the acquiring and holding of lands by corporations is that found in Section 7, Article XII, of the Constitution and in Section 9749, Revised Statutes 1919, which construed together mean that corporations cannot take and hold lands not necessary and proper for carrying on the business for which they were incorporated, whatever that business may be, and which do not prohibit the creation of corporations to buy, sell, deal in and rent lands and buildings.

5.   ———:   Charter Powers:   Ninety-nine Year Lease.   Where a corporation was formed for the purpose of "purchasing, owning and renting of buildings and other property . . . and to sell or exchange such property," it had power to purchase and hold real estate in fee and to lease the same for ninety-nine years, with provision for erecting a building thereon and a bond to secure performance of such lease, to another corporation formed "to own, acquire, buy and sell real estate and any interest therein and to carry on a general real estate and construction business in connection therewith;" and such latter corporation had power to execute such lease and bond.

6.   ———:   ———:   ———:   Holding Fee:   Who Can Question. Where the terms of a ninety-nine year lease made by a corporation as lessor are as consistent with a purpose on the part of the lessor to sell, as to hold, the fee, it will not be presumed that it will continue to hold it, if such holding would be unlawful; and whether or not such holding would be lawful will not be decided until such question is raised by the State in a direct proceeding for that purpose.

Realty Company v. Surety Company.

7. ———: ———: **Limit on Indebtedness.** Where the charter of a corporation places no limit upon the amount of indebtedness it may incur there is no such limit except that imposed by the corporation's credit and standing in the business and financial world, inasmuch as there is no statutory or constitutional provision in this State fixing any such limit.

8. **LEASE AND BOND:** Breach by Lessee: Measure of Damages. Where a lease for ninety-nine years provided for the erection of a building on the leased land by the lessee, which at the termination of the lease, whether by limitation or forfeiture, should become the absolute property of the lessor, and also provided that the lessee should keep the buildings on the leased land insured and in repair, and should pay rent and taxes, and the lessee as principal and defendant surety company as surety gave a bond to the lessor in a fixed sum to be paid "as liquidated damages and not as a penalty," and such lease was forfeited by the lessor for breach thereof by the lessee by its failure to erect such building and to pay rent, taxes, insurance premiums and for repairs, the measure of damages in a suit by the lessor against the lessee and surety on such bond was the difference between the value of the leased premises without the building and the value had the building been erected, not exceeding the aggregate amount of rents, taxes, insurance premiums and interest owing by the lessee and remaining unpaid at the time of the forfeiture and not exceeding the sum fixed in the bond.

Appeal from St. Louis City Circuit Court. —*Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*J. D. Johnson* for appellant.

(1) Marsix Company acquired no power under its charter to enter into said contract of lease with plaintiff for the term of ninety-nine years, and for the erection of the buildings on the demised premises, as provided in said lease, or to execute the bond in suit; and said contract of lease and bond was *ultra vires* of its corporate powers. Secs. 2872, 2990, 3021, 3346, R. S. 1909; Sec. 5, chap. 32, R. S. 1855; Sec. 7, art. 12, Mo. Const.; Prairie Club v. Kessler, 252 Mo. 435; Comm. v. Property Co.,

139 Ky. 689; School Board v. King, 127 Ky. 824; Proctor v. Board of Trustees, 225 Mo. 68. (2) Plaintiff company, under its charter had no power to purchase, and hold, the title in fee to the premises it leased to the Marsix Company for the term of ninety-nine years, nor to contract for said lease of said premises, and for the erection of the improvements thereon, or for the execution of the bond in suit and said transactions were *ultra vires* of plaintiff's corporate powers, and void. Authorities above. (3) If, on the other hand, plaintiff company and the Marsix Company each had power under their respective charters to acquire, hold, sell and deal in real estate, as a business for profit—then the purposes for which they were incorporated, as declared in their articles of incorporation, did not give either of them power to enter into said contract of lease and bond, and by doing so they engaged in business not expressly authorized by their charters and the laws under which they were organized, and said contract of lease was void. Sec. 7, art. 12, Mo. Const.; Sec. 2990, R. S. 1909; State ex rel. v. Lincoln Tr. Co., 144 Mo. 562; Blair v. Ins. Co., 10 Mo. 559; Pacific Ry. Co. v. Seely, 45 Mo. 212; Carroll v. Campbell, 108 Mo. 555; Re Grand Union Co., 219 Fed. 353; Bowman Dairy Co. v. Mooney, 41 Mo. App. 665; Kansas City v. O'Connor, 82 Mo. App. 655; Orpheum Theatre Co. v. Brokerage Co., 197 Mo. App. 661; City v. Bank, 74 Mo. App. 365; Sexton v. Ry. Co., 194 S. W. 1081; Hanlan v. Tr. Co., 251 Mo. 575; State ex inf. v. Mo. Athletic Club, 261 Mo. 599; State ex rel. v. Murphy, 180 Mo. 10. (4) The contract of lease and bond in suit being *ultra vires* of both the plaintiff company and the Marsix Company, and said contract being executory, and this suit being for damages for the alleged breach of said contract of lease and bond, our courts will not aid plaintiff in the enforcement of said invalid contract. Shoe Co. v. Stores Co., 132 Mo. App. 513; Wilson v. Merc. Co., 167 Mo. App. 323; Bank v. Bank, 173 Mo. 153; Smith v. Richardson, 77 Mo. App. 430; Mining Co. v. Taylor, 247 Mo. 24; Millinery Co. v. Trust Co., 251

569; Central v. Pullman, 139 U. S. 24; Bank v. Owens, 2 Peters, 526; Miller v. Ammon, 145 U. S. 421; 10 Cyc. 1161. (5) Plaintiff company having held title in fee and possession of the lot of land leased by it to the Marsix Company for more than six years next before said lease and bond in suit were executed, and said lot of land not being "necessary and proper for carrying on its legitimate business," plaintiff company was not "expressly authorized by its charter or the laws under which" it was "organized" to enter into the contract of lease and bond respecting said lot of land, and its action in that behalf was void. Sec. 7, art. 12, Mo. Const. (6) The contract of lease and bond in suit having been *ultra vires* of both plaintiff company and of Marsix Company, this defendant was entitled to plead the invalidity of said contract in defense of plaintiff's said cause of action. Fishing Club v. Kessler, 252 Mo. 436; Orpheum Co. v. Brokerage Co., 197 Mo. App. 661. (7) Marsix Company having had an authorized capital of only three thousand dollars, had no power, under its charter and the laws creating it, to enter into the contract of lease and bond with the plaintiff company by which it incurred an indebtedness of several hundred thousand dollars, and rendered itself financially insolvent. In these circumstances said contract of lease and bond was contrary to public policy and the laws of Missouri, Secs. 2245, 2981, 2990, R. S. 1909; Sec. 7, art. 12, Mo. Const. (8) If plaintiff was entitled to recover against appellant in the case, then, under the pleadings and evidence adduced at the trial, plaintiff would have been entitled to nominal damages only, and not for the sum or the value which the new building would, if erected, have added to the leased premises, nor for the amounts of the cash rents, taxes, insurance premiums and interest specified in plaintiff's petition. Bonding Co. v. Inv. Co., 150 Fed. 17; Smith v. Shepard, 15 Pick. 150; Trustee v. Miller, 3 Ohio, 261; Grommes v. Tr. Co., 147 Ill. 634; Campbell v. Nixon, 2 Ind. App. 463; Kramer v. Amburg, 53 Hun,

427; Ins. Co. v. Sherman, 46 N. Y. 370; Curtiss v. Miller, 17 Barb. 479; Watson v. Merrill, 136 Fed. 362.

*Henry S. Caulfield* for respondent.

(1) (a) The respective purposes .for which the plaintiff company and the Marsix Company were organized are expressly authorized by Subdivision 11, Sec. 3346, R. S. 1909. State ex rel. v. Corkins, 123 Mo. 67; Dairy Co. v. Mooney, 41 Mo. App. 672; Bank v. Texas Inv. Co., 74 Tex. 421; Building Assn. v. Barnes, 39 Neb. 834. (b) The purpose of said companies are not forbidden, but are sanctioned by Sec. 2990, R. S. 1909. Cahall and Pond v. Bldg. Assn., 61 Ala. 232. (c) They are not forbidden by Sec. 7, art. 12, Mo. Const. Ry. Co. v. Hellman, 109 Cal. 590; Williams v. Express Co., 184 S. W. 1146; State ex rel. Rhodes v. Pub. Service Com., 270 Mo. 547; State ex rel. v. Board of Curators, 268 Mo. 598; Commonwealth v. Property Co., 139 Ky. 689. (2) The declared purpose of the plaintiff company and of the Marsix Company contemplated the lease and bond involved herein. 9 C. J. p. 684; Gidley v. Lovenberg, 35 Tex. Civ. App. 203, 209; 3 Wash. Real Prop. (6 Ed.), secs. 2299-2301. (3) (a) The granting by the plaintiff company of a term of ninety-nine years did not evidence an intention on its part to hold the reversion for that period, or for any period contrary to law. State ex rel. v. Gas Light Co., 102 Mo. 472; People v. O'Brien, 111 N. Y. 1; St. Ry. Co. v. Detroit, 64 Fed. 628; Nicholl v. Railroad Co., 12 Barb. 460; Tate v. Neary, 52 App. Div. (N. Y.) 78; Weeks v. Trust Co., 125 Fed. 370; Brown v. Schleier, 118 Fed. 981. (b) Neither the lessee nor its surety can deny the lessor's title, by showing that the lessor (a corporation) has no power to hold the land. (4) The appellant surety cannot question, because it waranted, the capacity of its principal to make the bond. 32 Cyc. 27; Maledon v. Leflora, 62 Ark. 38; Machine Co. v. Maxwell, 63 Mo. 486. (5) The Marsix Company was not without power to obligate itself beyond the

amount of its capital stock. 10 Cyc. 1098; Miller v.
Paper Co., 39 Pa. Sup. Ct. 538. (6) The instructions
given by the court were correct. (a) Even if the bond
were construed to be for liquidated damages the only
benefit to appellant that would have accrued from liqui-
dating the damages would be to limit the amount of
recovery against it to a specified sum. And this was done
here. (b) But the bond in suit is not to be construed
to be for liquidated damages. It was rightly construed
by the court to be for a penalty so that plaintiff had to
prove its damages. Stillwell v. Temple, 28 Mo. 156;
Moore v. Platte County, 8 Mo. 467; Basye v. Ambrose,
11 Mo. 39; Parlin Co. v. Boatman, 84 Mo. App. 74; Gow-
er v. Saltmarsh, 11 Mo. 271; O'Brien v. Surety Co.,
203 Fed. 436; Long v. Towl, 42 Mo. 545; Lansing v.
Dodd, 45 N. J. L. 526; Hammer v. Breidenbach, 31 Mo.
49. (c) The forfeiture of the lease did not defeat plain-
tiff's right to recover for the breach of the bond, the
breach having occurred and become complete prior to
the forfeiture. O'Brien v. Surety Co., 203 Fed. 436;
Bonding Co. v. Inv. Co., 150 Fed. 17; Rock v. Bldg. Co.,
100 N. E. 887; Herboth v. Radiator Co., 145 Mo. App.
493. (d) The measure of damages was correctly stated
by plaintiff's third instruction. Shelton v. Durham, 7
Mo. App. 585; Lloyd on Building (2 Ed.), sec. 68; Real
Est. Co. v. McDonald, 140 Mo. 605. (e) If the court
erred in declaring that the amount of damages should
not exceed the amount due for rents, etc., the error was
favorable to appellant and did not prejudice him.
O'Brien v. Surety Co., 203 Fed. 436.

RAGLAND, C.—This is a suit on a bond given to
insure the performance of certain covenants of a lease
on the part of the lessee. Plaintiff, the obligee in the
bond, was incorporated under the laws of this State
April 5, 1905, for the purpose, according to its articles
of association, of "purchasing, owning and renting build-
ings and other property in this State and elsewhere,
now owned or acquired by it; and to sell or exchange

such property." Defendant, Marsix Realty and Construction Company, the principal obligor, was also a Missouri corporation, having received its certificate of incorporation May 3, 1912. It had a capital stock of $3000 and its charter recites that the purposes for which it was formed were: "To own, acquire, buy and sell real estate, and any interest of any kind whatsoever therein, and to carry on a general real estate and construction business in connection therewith. To own and hold such real and personal property as shall be necessary and desirable for the success, conduct and operation of such business, and also to do any and all things necessary and incident to carrying out the purposes aforesaid."

On March 6, 1906, the plaintiff acquired the title in fee simple to a lot of ground and the improvements thereon situated at the southeast corner of Seventh and Market Streets in the City of St. Louis. On June 15, 1912, it leased this property to the defendant, Marsix Realty and Construction Company, for a term of ninety-nine years. The lessee agreed to pay quarterly, in advance, during the term certain specified rentals and in addition thereto all taxes that should thereafter during the term be assessed against the leased premises. By section 6 of the lease the lessee covenanted and agreed that on or before May 1, 1916, it would begin to remove the improvements then on the demised premises and would, on or before eighteen months from and after said date, cause to be constructed, built and completed thereon, an entirely new modern building of fire-proof steel and reinforced concrete construction, adapted to business, commercial, office, hotel or theater purposes, at a cost to it of not less than $110,000, and that it would give to the lessor a bond in the sum of $25,000, executed by it and the defendant American Surety Company of New York, as surety, conditioned that it would construct, erect, complete and pay for said building within the time limited and save the lessor harmless from and against all

liens and claims of every kind growing out of such construction.

The lease further provided that upon the failure of the lessee to keep and perform any of its covenants the lease might, at the option of the lessor, be forfeited and determined by notice in writing to that effect. Upon its execution the defendant, Marsix Realty and Construction Company, as lessee, went into constructive possession of the demised premises by accepting an assignment of a prior lease to the Pittsburg Plate Glass Company, expiring February 1, 1916.

On April 17, 1918, the lessee had done nothing whatever in the way of performing its agreement under section 6 of the lease; it had defaulted in the payments of rent, taxes and fire insurance premiums, which it was obliged by the lease to pay; and it was owing plaintiff on account of these several items, with interest thereon, the aggregate sum of $28,127.97. The lease was thereupon terminated by plaintiff in accordance with its provisions.

The bond sued on was executed contemporaneously with the lease in compliance with section 6 thereof and conformed in all respects to the provisions and requirements of that section. It recites, however, that the obligors are held and bound to the obligee "in the just and full sum of $25,000, to the payment whereof, well and truly to be made as liquidated damages and not as a penalty," they bind themselves, etc.

The petition after alleging the execution of the bond and setting it out according to its legal effect assigned as a breach thereof the failure of the defendant, Marsix Realty and Construction Company, to construct on the demised premises an entirely new modern fire-proof building in accordance with the provisions of section 6 of the lease. The petition further alleged that the defendant, Marsix Realty and Construction Company was indebted to plaintiff for rent, taxes, insurance premiums and interest in the sum of $28,127.79; that said defendant was insolvent; that the new building provided for under

the lease would, if erected, have added to the value of the leased premises $110,000; that such added value was intended to afford, and would have afforded, additional security for the payment of rent as it accrued under the lease and for the performance of the other undertakings thereunder on the part of the lessee; that by the breach of the bond plaintiff had been deprived of the security that would have been afforded by the new building with the consequent loss to it of its entire debt of $28,127.97; and that by the same breach it had suffered further damages in the loss of the value that such building would have added to the demised premises in the sum of $110,000. The prayer was for judgment for $25,000, the penalty of the bond and an award of execution for the full sum in satisfaction of the damages alleged to have been sustained.

In its separate answer, the defendant, American Surety Company of New York, admitted the execution of the bond; it also admitted that its co-defendant had wholly failed to erect a new building as specified in section 6 of the lease, but denied the allegations of the petition with respect to the damages plaintiff claims to have sustained on account of such failure. As an affirmative defense it alleged that the lease and the bond were *ultra vires* of the corporate powers of both plaintiff and the defendant, Marsix Realty and Construction Company, and were, therefore, void. This portion of the answer, on plaintiff's motion, was stricken out by the trial court. The defendant, Marsix Realty and Construction Company, failed to answer.

Plaintiff introduced evidence tending to support, among others, the allegations of its petition with respect to the amount owing it under the lease for rent, taxes, insurance premiums and interest, and with respect to the value that would have been added to the leased premises by the erection of a new building thereon as provided in the lease.

Defendant, American Surety Company of New York, introduced in evidence the articles of association of the

plaintiff corporation and also those of its co-defendant and rested. It then asked leave to amend its answer to conform to the proof by reinstating its plea of *ultra vires*. Its request was denied.

The cause was tried to the court without a jury. On the measure of damages the court declared the law to be that it "should assess the plaintiff's damages at such sum at it may find from the evidence to be the fair and reasonable difference in value between the leased premises with the improvements as they were on the day that the court may find the forfeiture of the lease became complete, and the leased premises as they would then have been if, in lieu of the improvements thereon as they then were, there had been erected thereon after the making of the lease and on or before November 1, 1917, an entirely new, modern building of fire-proof steel and reinforced concrete construction, adapted to business, commercial, office, hotel or theater purposes, at a cost of not less than $110,000"—the amount of such damages, however, not to exceed the amount of the bond, nor the aggregate amount of the payments due plaintiff under the lease on the day its forfeiture became complete.

The defendant, American Surety Company, of New York, requested two declarations of law, both of which were refused: (A) that under the pleadings and evidence the verdict and judgment should be in its favor; and (B) that in no event could plaintiff recover more than nominal damages.

The finding was for plaintiff and its damages were assessed at $25,000. From the judgment rendered in accordance therewith the defendant, American Surety Company of New York, appeals. Such other facts as are necessary to an understanding of the questions involved will be stated in the course of the opinion.

I. Appellant's first and principal contention is that the ninety-nine year lease was *ultra vires* of the corporate powers of both the plaintiff and the defendant, Marsix

Realty and Construction Company, and therefore void, and that as a consequence the bond given in aid of the lease and as a part of the same transaction was also void.

Both companies were organized under the laws of this State as business corporations. The ar-

**Real Estate Corporations.** ticles of association of defendant, Marsix Realty and Construction Company, hereinafter called the defendant, recite that it was formed "to own, acquire, buy and sell real estate, and any interest of any kind whatsoever therein, and to carry on a general real estate and construction business in connection therewith." Those of plaintiff declare that the purpose for which it was organized was "the purchasing, owning and renting of buildings and other property in this State and elsewhere, . . . and to sell or exchange such property." From these recitals it is manifest that the transaction involving the lease in question was not merely incidental to the carrying on by the two corporations of some other principal business for which they were respectively organized, but on the contrary, if within the terms of their charter at all, was itself the kind of business they were primarily formed to transact. That being true, appellant says that plaintiff and defendant were without the power to enter into the lease, notwithstanding the provisions of their respective charters, on the broad ground that under the laws of this State there is no authority for granting to business corporations the power to buy, sell, hold and deal in real estate as a business. This seems to be the first time that the question has been raised in this State, though there must be many corporations engaged in some one or more of the various branches of what is commonly called the real estate business and which were specifically organized for such purposes.

Subject to the restrictions of constitutional provisions, the Legislature of this State has plenary power to create corporations and prescribe the business in which they may engage. The only limitations on its power in this respect found in the Constitution are that corpora-

tions cannot be created by special law (Sec. 2, Art. XII), nor without the payment of certain incorporation fees (Sec. 21, Art. X) and that no religious corporation can be established, except for the purpose of holding the title to real estate for church edifices, parsonages and cemeteries (Sec. 8, Art. II). Clearly none of these prohibitions deprive the Legislature of the power to create by general law corporations for the purposes of buying, selling, holding and dealing in real estate as a business. The question then is whether the Legislature has, in the exercise of its undoubted power, authorized by general law the organization of corporations for such purposes.

At the times respectively when plaintiff and defendant were incorporated, the purposes for which manufacturing and business corporations might be created were prescribed by what is now Section 10151, Revised Statutes 1919. The section after specifically naming ten separate and distinct purposes for which such corporations may be formed concludes as follows:

"Eleventh—For any other purpose intended for pecuniary profit or gain not otherwise especially provided for, and not inconsistent with the Constitution and laws of this State; provided, that nothing in this section shall be construed to authorize the incorporation of a bond investment company . . . ." This language is broad enough to authorize incorporation for all lawful business pursuits, for pecuniary profit or gain, which may engage capital and enterprise, and which are not specifically provided for by other provisions of the statutes relating to private corporations. [State ex rel. v. Corkins, 123 Mo. 56; Bowman Dairy Co. v. Mooney, 41 Mo. App. 665, 672; St. Louis Colonization Assn. v. Hennessy, 11 Mo. App. 555, 559.] The buying, selling and dealing in real estate and the purchasing, owning, renting, selling and exchanging of buildings, for profit or gain, are certainly lawful and usual business pursuits, and it seems entirely clear that they are comprehended within the broad and sweeping terms of the statute just quoted. Such has been the construction placed upon similar stat-

utes by courts of other jurisdictions. [National Bank v. Texas Inv. Co., 74 Tex. 421; York Park Building Assn. v. Barnes, 39 Neb. 834; Cahall and Pond v. Citizens Mutual Bldg. Assn., 61 Ala. 232.]

But it is said that the statute in express terms excepts from its authorization the creation of corporations for purposes "inconsistent with the Constitution and laws of this State," and that the purposes for which plaintiff and defendant were organized are inconsistent with Section 7, Article XII, which provide: "No corporation shall engage in business other than that expressly authorized by its charter or the laws under which it may have been or hereafter may be organized, nor shall it hold any real estate for any period longer than six years except such as may be necessary and proper for carrying on its legitimate business."

It is not apparent how this section of the Constitution can operate as a limitation on the power of the Legislature to create corporations to buy and sell and deal in real estate, or to purchase, own and rent buildings. It does not prescribe or limit the purposes for which corporations may be created; it does not even purport to deal with that subject. The portion of it pertinent to the question under consideration merely prohibits any corporation from holding any real estate for any period longer than six years except such as may be necessary and proper for carrying on its legitimate business, the converse of which is, that if the carrying on of its legitimate business makes it necessary and proper a corporation can hold real estate indefinitely. If chartered to buy and sell real estate, it would no doubt be necessary and proper for a corporation to hold real estate after buying it until such time as it could make an advantageous or satisfactory sale, or, if chartered to purchase, own and rent buildings, to hold buildings acquired and used by it in the conduct of such business indefinitely. The holding in such cases would unquestionably be necessary and proper for carrying on the legitimate businesses for which the corporations were express-

ly organized and the constitutional limitation would have no application. [Market Street Ry. Co. v. Helman, 109 Cal. 571, 590.]

Appellant urges that if Section 10151, Revised Statutes 1919, be construed to authorize business corporations to buy and sell real estate as a business, such construction would be contrary to the public policy of this State, because it would make it possible for a few such corporations to acquire farm lands or any other classes of lands in practically unlimited quantities, and to hold such lands interminably to the exclusion of all persons. There seems to be no just ground for appellant's apprehensions. To buy and sell real estate as a business is one thing and to buy and hold land is another and totally different thing. As suggested by the Kentucky Court of Appeals in Commonwealth v. Louisville Property Co., 139 Ky. l. c. 698, "to hold lands interminably is not a business." But in any event, the only public policy manifested by our organic and statutory law with respect to the acquiring and holding of lands by corporations generally is found in the section of the Constitution heretofore quoted and Section 9749, Revised Statutes 1919, which construed together simply mean that corporations cannot take and hold lands not necessary and proper for carrying on the business for which they were incorporated whatever that business may be. The English statutes of mortmain have never been reenacted in this State, except so far as they are embraced in the constitutional provision prohibiting the establishment of religious corporations, heretofore referred to, nor has the policy of those statutes ever been held to be a part of our common law [St. Louis Colonization Assn. v. Hennessy, supra; 7 R. C. L. 566, par. 551.] But for the constitutional limitation above noted and the implied restriction contained in Section 9749, Revised Statutes 1919, there would be nothing to restrain business corporations in this State from taking and holding lands in unlimited quantities as at common law.

II.   Appellant's next contention is: That if it be conceded that the declared purposes for which plaintiff and defendant were organized were valid, still the execution of the lease and bond was not authorized either expressly or by reasonable implication by the language of their respective charters.   With respect to

Charters
Construed.   plaintiff, it was formed for the purpose of "purchasing, owning and renting of buildings and other property . . . and to sell or exchange such property."   It is argued that because of the use of the word "buildings" plaintiff was not empowered "to purchase and hold real estate in fee and to contract for the leasing and improving of same."   But evidently the power to purchase, own and rent buildings includes the power to purchase, own and rent land on which the buildings stand or are to stand.   Where a grant of pow- is given, all the means necessary to effectuate the power pass as an incident to the grant.   [7 R. C. L. 528, par. 513.]   And furthermore the power to sell and convey land in fee includes the power to sell and convey a lessor estate by lease.   [Starke v. Guffey Petroleum Co., 98 Tex. 542.]   As to plaintiff's authority to contract for improving its lot, that was likewise implied in the power expressly given it.   [Ashenbroedel Club v. Finlay, 53 Mo. App. 256.]

So far as the defendant was concerned, it was authorized to buy and sell real estate and *any interest therein* and to carry on a general real estate and construction business.   It had, therefore, express authority at least for taking the lease as a lease for years is but a bargain and sale of the demised premises for the time.   [Abby v. Billups, 35 Miss. 618.]   And it cannot be doubted but that in that connection the defendant had the implied power to obligate itself under the lease to erect improvements on the leased premises.   By making such improvements it would give its own leasehold interest a stable value and make it more readily salable—an ordinary incident of dealing in real estate.   A corporation, like a natural person, has a right to conduct its legitimate busi-

ness by all the means necessary to effect such object. Within its prescribed range, it can do whatever a natural person *mutatis mutandis* could do.   Killingsworth v. Portland Trust Co., 18 Ore. 351.]

III.   Appellant makes the further contention that plaintiff, even if it had the legal right to acquire the title to the lot in question in the first instance, by the terms of the lease to defendant, evidenced an intention to hold the reversion in fee indefinitely and that therefore the lease was void.  As to this it is sufficient to say that the terms of the lease are just as consistent with a purpose on the part of the plaintiff to sell the fee as to hold it, and it cannot be presumed that plaintiff will continue to hold it; if such holding would be unlawful.   Whether or not such holding would contravene the constitutional inhibition, it will be time enough for us to decide when such question is raised by the State in a direct proceeding for that purpose.  [Louisville School Board v. King, 127 Ky. 824, 837.]

**Holding Fee: Presumption.**

IV.   Appellant claims that defendant by entering into the ninety-nine year lease and bond contract undertook to engage in a business involving expenditures and liabilities many hundreds of thousand of dollars in excess the lease and bond were void.   The general of its capitalization and that for that reason rule is that in the absence of charter or statutory restrictions a corporation may incur indebtedness in excess of its capital, if done within the scope of its charter powers.  [14a C. J. 574.]  In such cases there seems to be no limitation upon the amount of indebtedness that may be incurred except that imposed by the corporation's credit and standing in the business and financial world.   Defendant's charter places no restraints upon it with respect to the amount of indebtedness it may incur and we know of no statutory or constitutional provision that would operate as such.   Nor is there any thing in de-

**Limit on Indebtedness.**

fendant's charter from which the conclusion may be drawn that the business expressly authorized by it is in any way dependent upon the size or extent of the financial obligations that must be necessarily incurred in its transaction. The point is ruled against appellant.

V. Finally, appellant complains of the measure of damages embodied in the declaration of law given at plaintiff's request. On this point appellant says: ''The express obligation of the bond is that the obligors 'are held and firmly bound unto the' obligee in the sum of $25000 'to the payment whereof well and truly to be made as liquidated damages and not as a penalty.' Plaintiff has seen fit to waive any right it may have had to sue for liquidated damages, according to said provision of the bond, and instead has sued for damages in the way of penalties under the bond and tried its case on that theory; consequently plaintiff is now bound by its action in that behalf, and is not entitled to recover liquidated damages in the case. But *the intention of the parties must prevail,* and their agreement that in case of a breach of the bond, the damages should be liquidated, conclusively indicates that they never intended that such damages should be measured by said difference in the value of the leased premises,'' that is, the difference between the value of the premises without the building and their value had the building been constructed according to the provisions of the lease—on the day the lease terminated. Appellant's position is somewhat paradoxical. According to it the parties intended—and stipulated in advance —that in case of a breach of the bond plaintiff's damages would be $25,000, but that the awarding of that precise sum by the trial court cannot stand because it was made on the wrong legal theory. We think it manifest, however, that the assessment of damages was strictly according ''to the rules of the game.''

It is true that the bond recites that the stipulated sum is to be paid as liquidated damages, but such recital is by no means conclusive as to the intention of the parties

*Measure of Damages.*

in that respect. It is universally held that where, as in this case, an agreement contains several stipulations of various degrees of importance, and the breaches of some would be attended with losses difficult to be estimated, and in others the damages would be of easy calculation, the sum specified in the agreement as the amount of damages for the breach of any stipulation will be construed as a penalty and not as liquidated damages, even though the parties in express terms have declared the contrary. [Hammer v. Breidenbach, 31 Mo. 49.] The trial court, therefore, properly held that for the breach of the bond the plaintiff was entitled to recover only such actual or compensatory damages as it was able to establish by the evidence. The measure of such damages the court declared to be the difference between the value of the leased premises without the building and the value had the building been erected, not exceeding the amount of the bond, and not exceeding the aggregate of the rents, taxes, insurance premiums, and interest owing by the lessee and remaining unpaid at the time of the forfeiture. The lease provided that the building to be erected on the demised premises by the lessee should be kept in repair and insured by it and that at the end of the term, whether by limitation or forfeiture, such improvement should become the absolute property of the lessor. To secure the added value to the land by the erection of the building was plainly the object of the bond. It is said that "whenever a building, to be erected by a lessee, will materially increase the rental value of the premises, and the lease reserves to the lessor such a periodical rent that his stipulated right of re-entry into the vacant premises may not be, of itself, ample idemnity for any default, it is clear that the building is intended to constitute, not only additional rental payable at the end of the term, but also an additional security for the rent currently accruing." [O'Brien v. Surety Co., 203 Fed. 436.] In this case the court, in assessing plaintiff's damages, considered the added value of the land solely from the standpoint of the additional security it

would have afforded for the rents and other money obligations payable by the lessee under the terms of the lease. Plaintiff by reason of the lessee's failure to make these payments lost more than $25,000, and while it is true that the bond does not bind the obligors to make them good, yet had the building been erected the added value of the demised premises would have fully compensated plaintiff for the loss. [Rock v. Monarch Bldg. Co., 100 N. E. (Ohio) 887.]

According to the views herein expressed, the judgment of the circuit court should be affirmed. It is so ordered. *Small, C.,* concurs; *Brown, C.,* absent.

. PER CURIAM :—The foregoing opinion of RAGLAND, C., is adopted as the opinion of the court. All of the judges concur.