————o————

JABEZ H. POTTER, Respondent, *vs.* HENRY MCPHERSON *et al.*, Appellants.

1. *Practice, civil—Instructions—Refusal of, proper, when.*—There is no error in refusing an instruction, the substance of which is given in another form.

2. *Contract—Percentage of payment reserved till completion of work—Stipulation of forfeiture in case of non-performance—Rules as to damages.*—By the terms of a contract between A. and B. for constructing a railroad, payments were to be made by A. in monthly instalments, ten per cent. being reserved by him until the completion of the work "as a security for the faithful performance of the contract;" and in case of certain breaches in the agreement on the part of B., the amounts reserved were to be "absolutely forfeited" to A. *Held*, that amounts to be so retained were not liquidated damages for such breaches, but B. could recover the entire sum agreed upon less the damages which in fact might be sustained by reason of his non-compliance with the contract.

*Appeal from Moniteau Circuit Court.*

*Draffen & Williams,* for Appellants.

*John Cosgrove,* for Respondent, cited Woodson vs. Skinner, 22 Mo., 13 ; Simms vs. State Ins. Co. of Hannibal, 47

Mo., 54; Sedgw. Meas. Dam., pp. 419, 441; Jennison vs. Gray, 29 Iowa, 537.

Hough, Judge, delivered the opinion of the court.

On the 26th day of March, 1860, the defendant, McPherson, entered into a contract with the Tebo and Neosho Railroad Company for the performance of certain work in the construction of its road-bed in Cooper county, Missouri, in which contract the defendant, Barnes, subsequently became interested with him as a partner.   On the 20th day of April, 1870, a contract was made by Thompson & Stewart with McPherson, to which the defendant, Barnes, also became a party, to execute and complete by November 15, 1870, according to certain specifications, a portion of the work of construction of said road-bed undertaken by McPherson, for which Thompson & Stewart were to be paid by the defendants, monthly, upon monthly estimates to be made by the engineer of the company, of work done during the previous month, ten per cent. of the estimate being in all cases retained by the defendants until the completion of the work as a security for the faithful performance of the contract.   This contract remained in force until September 3, 1870, and under it work was done by Thompson & Stewart to the amount of $21,815.99, the whole of which sum was paid by defendants to said Thompson & Stewart, save the reserve on the monthly estimates, which aggregated on said September 3, 1870, the sum of $2,143.60, and which remained unpaid.   On the last mentioned date Thompson & Stewart made the following indorsement on this contract: " We, the undersigned, parties to the foregoing, do hereby acknowledge that we have forfeited all privileges under the within contract by our non-compliance with its stipulations, and agree that this forfeiture and annulment shall take effect from and after the 31st of August, 1870.

" Signed at Boonville, Sept. 3, 1870.

" J. W. Thompson,<br>" E. Stewart."

The reason for making. this indorsement nowhere plainly appears, but on the same day on which it was made, Thompson & Stewart entered into another contract with McPherson & Barnes for the completion of a portion of the work embraced in the first contract, and at the same prices therein ·fixed. The work to be done was designated in the first contract as "the cleaning and grubbing, graduation and masonry required to complete the portion of the Tebo and Neosho Railroad hereinafter described, viz: sections No. 11, 12 and 13, as indicated on map and profile of the northeastern extension of said railroad, and the masonry on the whole line extending from Pettis county line to Boonville;" and in the second contract it was designated as "the clearing and grubbing, graduation and masonry required to complete the portion of the Tebo and Neosho railroad hereinafter described, viz: on sections 11, 12 and 13, between stations numbered 543 and 683, including also the bridge masonry of two abutments and one pier at La Mine river crossing." Both contracts required the work to be completed by November 15, 1870, unless it should be suspended or delayed by the act or wish of the defendants, in which event additional time for its completion was to be granted. The second contract contained, in addition to the stipulations embraced in the first contract, the following clause: "After the completion under this contract of all the work aforementioned, the party of the second part, [defendants] will pay over also the amount of reserved per centum thereon, to-wit: on the total amount of final estimates by the engineer at the above prices for all work on sections 11, 12 and 13."

The second contract also contained a provision that in the event Thompson & Stewart failed to comply with the requirements of their contract, by neglecting or refusing to employ such force as the defendants should require, or should persist in doing their work in an improper manner, or should employ improper persons, or in any manner neglect or evade the performance of their obligations, the defendants could, after giving five days written notice to the person in charge,

if the evil complained of should not be remedied to their satisfaction, declare the contract forfeited, and in such case it should immediately cease and be void, and the defendants could relet the work; and in case of such declaration of forfeiture, the ten per cent. of the monthly estimates retained by the defendants should be absolutely forfeited to them; or in case Thompson & Stewart should suspend their work in such manner as to work an abandonment of the same, in the opinion of the engineer of the railroad company, the contract was to be null and void, and the reserved per cent. should go to the defendants.

On the 10th day of October, 1870, Stewart sold and transferred to the plaintiff all his interest in the contract aforesaid. Potter took Stewart's place in the firm, and Thompson & Potter proceeded with the work as partners under the contract. There was testimony tending to show that at the time Potter purchased the interest of Stewart in this contract, the defendant, Barnes, was present, or was consulted, and Potter stated that the time allowed for the completion of the work specified in the contract was insufficient, and Barnes promised before his purchase, that in the event the work progressed satisfactorily, the defendants would extend the time if it should be found to be too short. Difficulties of various kinds arose in the prosecution of the work; Thompson & Potter disagreed; discussions arose among the laborers; Thompson's personal habits seriously impaired his efficiency as a supervisor of the work, and the plaintiff testifies that he thereupon solicited the engineer, in pursuance of an understanding previously had with him, to suspend the work in order that he might get rid of Thompson, and that the engineer did so on the 23d day of December, 1870. Upon the same day the defendants gave notice of forfeiture of the contract for failure to complete the work in the time prescribed, and for improper and unsatisfactory management. Work was done for some time after this date, and was recognized and accepted by the defendants. Thompson & Potter never completed the entire work. They and the defendants failed to agree on a settlement, and, in 1871, Thompson sold and assigned to the plain-

tiff, Potter, all his interest in the claims and demands of the firm against the defendants for the work and labor done by them, and Potter, in 1872, instituted the present suit for the value of said work and labor, the items of which, together with the payments made thereon, were set forth in an account, and asked for judgment for the sum of $7,206.29 and interest.

The defendants, in their answer, claimed a credit of $509.03, not allowed by the plaintiff; set up the contracts hereinbefore mentioned, and the breach and forfeiture thereof, and averred that they had been damaged by the breach in a sum larger than the amount of the per cent. reserved. They admitted, however, that the sum of $3,356.76 was due to the plaintiff on account of said work, and made a tender thereof. No testimony was offered by the defendants to show that they had suffered any damage by reason of the failure of Thompson and Potter to complete their work according to contract. The amount reserved by the defendants, under the first contract, was admitted by them, in their answer, to be $2,143.60, and under the second contract, $1,197. There was a verdict and judgment for the plaintiff for the sum of $6,060.16, and the defendants bring the case here by appeal, and assign as error the action of the circuit court in giving the first, third, fourth and sixth instructions asked by the plaintiff, and in refusing the seventh, eighth, ninth, tenth, eleventh and twelfth instructions asked by the defendant.

The first instruction given for the plaintiff told the jury in effect that if they believed the plaintiff had purchased the interests of Thompson & Stewart in the contracts with the defendants, they would find for him the amount admitted by the defendants to be due, together with the sum of $1,197, admitted by them to have been retained as the ten per cent. reserve under the second contract, and also such portion of the sum of $2,143.60 as they should find was reserved from the monthly estimates for work done on sections 11, 12 and 13, unless the jury should believe that the defendants suspended said work, and that such suspension was for sufficient

reasons, and in the manner and form designated in said second contract.

The third instruction submitted to the jury the question whether the notice stopping the work was given by defendants in good faith, and for the reasons therein stated.

The fourth instruction simply stated that the work sued for had been performed, and had not been paid for.

The substance of the sixth instruction was that if the work was suspended by the mutual understanding of the plaintiff and defendants that it should not be further prosecuted, then plaintiff was entitled to recover the value of the work done, less the amount paid by the defendants.

We see no error in these instructions.

The first instruction given at the instance of the defendants was that plaintiff could not recover the reserved per cent. unless the jury believed that the failure of Thompson & Potter to complete the work according to contract was not their fault, or that it was by the consent and agreement of both contracting parties that the work was stopped.

The second instruction given at the instance of the defendants, is as follows : " By the pleadings of the plaintiff and the defendants in this cause, it is admitted as true that the sum of $3,356.76 is due and owing for work and labor done under the contract read in evidence, and that amount of money was tendered by the defendants to the plaintiff, Potter, on the 3d day of January, 1872, and the only issues for the jury to decide in this case, are the two questions in relation to the $509.03 that the defendants claim in their answer was paid, and the reserve ten per cent. ; and if the jury find from the evidence that the defendants paid the said $509.03 as stated in their answer, then the only remaining question for the jury to decide is as to the reserve per cent. mentioned in the two contracts read in evidence, marked exhibits A. and B. ; and the jury are instructed that as to the ten per cent. reserve for the work done under the contract marked exhibit A., the plaintiff cannot recover any portion of said reserve if they find that said reserve was forfeited by Thompson & Stewart; and

the jury are instructed that the written indorsement on said contract, if the same was signed by Thompson & Stewart, is a forfeiture in law of said per cent., and the jury must so find, unless the jury should further find from the evidence that the work under the last contract, marked "B.," was abandoned by the mutual consent of plaintiff and defendants, or that the defendants wrongfully prevented the plaintiff from completing the same.

The third, fourth and fifth instructions given for the defendants, enunciated, though in varied phraseology, substantially the same proposition, and were all to the effect that the plaintiff could not recover the reserve per cent. unless the suspension of the work was by mutual consent of the parties, or the wrongful act of the defendants. The defendants' sixth instruction given by the court related to the financial condition of the Tebo and Neosho Railroad Company, and needs no notice. Defendants' seventh instruction, the refusal of which is complained of here, stated in substance that if the plaintiff and Thompson neglected and mismanaged the work, and, after notice from the engineer, refused to correct the evils complained of and abandoned the work, and defendants declared the contract forfeited therefor, plaintiff cannot recover the reserve per cent. This instruction only stated in another form what had already been announced to the jury in the third, fourth and fifth instructions which were given, and there was no error in refusing it.

The eighth instruction declared that if the engineer notified Thompson & Potter to suspend work and they did so, and afterwards failed to complete the same, plaintiff could not recover the per cent. reserved. This was clearly wrong, and was properly refused. If the work was arbitrarily suspended and its completion prevented by the engineer or the defendants, or if the notice had been given by direction of defendants, and in pursuance of an understanding with the plaintiff, on which point there was some testimony, it certainly could not affect the plaintiff's rights.

The ninth instruction declared that an arrangement of the plaintiff with the engineer for the suspension of the work,

such as was testified to by the plaintiff, was an abandonment of the work. It was not necessarily so.

The tenth instruction stated that plaintiff could not recover the per cent., unless defendants actually prevented Thompson & Potter from completing said work by some wrongful act, and the eleventh declared that there was no evidence of any such prevention. Both of these instructions were rightly refused.

The twelfth was to the effect that the plaintiff was estopped by the pleadings from denying the authority of the engineer to stop work. Admitting this to be true, we do not think it had any material bearing upon the case.

The second instruction given for the defendant and the first one given at the instance of the plaintiff, present, substantially, the same view of the case. Both seem to proceed upon the theory that the per cent. reserved under the first contract, as well as that reserved under the second contract, was, by virtue of the provision in the second contract heretofore quoted, to be paid by the defendants on the final estimate of all the work done on sections 11, 12 and 13, unless there should be a forfeiture of the rights secured by the second contract, and we understand the same construction to be given to this clause by the defendants in their answer. The jury evidently found that the work was discontinued by the consent of the parties, or at least under circumstances which did not work any forfeiture of the contract, and we are not disposed to disturb their finding.

But apart from this view of the case, which was the controlling one taken at the trial, the plaintiff was on other grounds entitled to recover the per cent. reserved under both contracts. The ten per cent reserved was not in the nature of liquidated damages, but was simply a sum placed by the contract in the hands of the defendants as a security for the faithful completion of the contract, notwithstanding it was stipulated that it should be forfeited to the defendants upon a breach of the contract. To hold otherwise in such a case would produce the grossest inequality and injustice. The

amount forfeited might bear no just relation to the damage suffered. The more nearly the contract approached completion, the greater would be the reserve, and the less would be the damage. As the damage diminished, the sum forfeited would increase. The sum reserved being only a security, the plaintiff was entitled to recover the whole value of the work and labor done, less the damages sustained by the defendants by reason of the failure to complete the contracts. Here the defendants have neither proved nor attempted to prove any damage, and they cannot therefore retain any portion of the sum reserved.

The amount admitted by the defendants to be due to plaintiff was $3,356.76. The sum reserved under the first contract was admitted to be $2,143.60, and that under the second contract $1,197. The credit of $509.03 was estimated by the defendants in arriving at the balance of $3,356.76 admitted by them to be due, and it is quite apparent from the verdict that the jury must have allowed it to them again. The defendants have no reason to complain of the judgment on the record presented, and it will be affirmed.

All the judges concur, except Judge Vories, who is absent.