J. M. KNAUS, APPELLANT, v. MRS. S. M. LINDSEY, RESPONDENT.*

Kansas City Court of Appeals. March 1, 1926.

*Corpus Juris-Cyc. References: Damages, 17CJ, section 248, p. 952, n. 46.

W. W. Blain for appellant.

Louis Hoffman and A. L. Shortridge for respondent.

ARNOLD, J.—This is an action in damages to recover the sum of $500 upon a written contract for exchange of real estate. The facts shown are that plaintiff was the owner of an improved ten-acre tract of land near the city of Sedalia, Pettis county, Missouri, upon which he resided and which he valued at $8500, and that defendant owned a dwelling house in the city of Sedalia which she valued at $4000. Through the activities of a real estate agent of Sedalia, the parties entered into a written contract, under the terms of which the properties were to be exchanged, defendant agreeing to pay a cash difference of $4500. The contract contained the following stipulation:

"The parties hereunto bind themselves, their heirs, each unto the other in the sum of $500, which they hereby agree upon as liquidated damages to be paid by the party failing to comply with the covenants contained in this agreement."

The petition alleges that a written contract of exchange was entered into between the parties on June 11, 1924, wherein it was agreed that plaintiff would exchange his home place, free of encumbrance, containing ten acres, more or less, located on the east side of Marshall street, a public highway, and about one-half mile south of the new Missouri Pacific shops in Pettis county, Missouri, for an agreed consideration of $8500; that as a consideration for said property defendant agreed to convey to plaintiff her residence property containing two lots located at 1414 South Park Avenue in Sedalia, free of incumbrance, and to pay plaintiff $4500 in cash at the time of closing the deal; that the deal should be consummated on June 20, 1924; that the abstracts of both properties and the deeds thereto were prepared prior to said date; that on said June 20, 1924, plaintiff offered defendant his deed and abstract showing good merchantable title in him to the ten-acre tract above described; that defendant refused to accept said deed and abstract and informed plaintiff that she would not carry out the contract which was filed and by exhibit made a part of the petition; that plaintiff has repeatedly requested defendant to carry

out her said contract; and that plaintiff was ready and willing to close said contract but that defendant has failed and refused to perform the covenants contained therein. The petition sets out *verbatim* the clause in said contract respecting liquidated damages which we have quoted. The petition further alleges that plaintiff is entitled to recover said sum of $500; and that plaintiff, under the terms of said contract, paid the Landman Abstract Company the sum of $2.50 for bringing the abstract down to date; that it was a needless expense to plaintiff owing to defendant's failure to perform her part of the contract and will be worthless to plaintiff.

The prayer asks judgment for $500 liquidated damages, and the further sum of $2.50 for expense on abstract. The amended answer is, first, a general denial, followed by a specific denial that defendant entered into a written contract agreeing to exchange real estate with plaintiff, and alleges that the pretended contract alleged in the petition was procured by fraud on the part of plaintiff's agent, in this, to-wit:

That Manlove Smith, one of plaintiff's agents, came to defendant's house and represented to her that plaintiff was willing to exchange his land in question for defendant's residence property and $4500 in cash; that defendant informed said agent that she would trade only by paying a cash difference of $4000; and that said agent then said he could get plaintiff to make the exchange on such terms; that on the day following this conversation said agent brought to defendant's home a paper which he asked her to sign, saying plaintiff had agreed to a reduction of the cash difference from $4500 to $4000; that said agent falsely represented to defendant that the paper which he produced and desired her to sign provided for a $4000 cash difference; that said agent pretended to be in a great hurry and would not read said contract to defendant; that before signing said contract defendant stated to said agent that she did not have the money to pay the cash difference and that said agent assured her that he would assist her in borrowing the money; that the agent insisted on her signing the pretended contract and that defendant told him she could not sign it if by so doing she would become bound thereby; that the agent assured defendant she would not be bound thereby and that he was only asking her to sign in order to bind the plaintiff; that the agent agreed he would not deliver said contract to plaintiff until defendant was satisfied she desired to make and close the deal; that defendant, relying upon said representations and being deceived thereby did sign said contract under representations by said agent that it contained the terms mentioned by him; that on the day defendant signed said contract, and within a few hours thereafter, she notified said agent that she was unable to make the deal and carry out the contract, and that she did not desire to do so; that instead of holding said contract

as he assured defendant he would hold it, said agent immediately delivered said contract to plaintiff without defendant's authority.

The reply was a general denial. Trial was to a jury and the verdict was for plaintiff in the sum of $500. A motion for a new trial was filed by defendant and sustained by the court for the following stated reasons:

"1. Because the court through error refused defendant's instruction 'C.'

"2. Because the court through error refused to allow defendant to show by evidence that the plaintiff did not suffer pecuniary damage.

"3. Because the court through error held the sum of $500 stipulated in the contract was liquidated damages when it in fact was a penalty.

"4. Because the court in refusing to accept a finding and verdict of the jury orally told the jury they should find for the full amount of $500 or nothing in the event their finding and verdict should be for the plaintiff."

Plaintiff appeals from the action of the trial court in sustaining defendant's motion for a new trial.

In support of the allegations of his petition plaintiff testified that after the agent had informed him he had a buyer for his place, he and the agent went to defendant and talked the trade over with her; that he made the proposition to defendant that he would take her property at $4000 and $5000 in cash; that defendant said she would have to study about it; that he asked defendant to make him a proposition, and she said, "I will let you know in the morning." That the agent came to plaintiff's place that evening and said defendant had refused plaintiff's proposition and made a counter one, offering the Park avenue property and $4500 cash; that he accepted the counter-proposition and the agent prepared a memorandum in pencil which plaintiff signed, as follows:

"June 11, 1924.

"This contract certifies that I am willing to exchange the properties on the following terms. My 10 acres on Marshall avenue for property at 1414 Park avenue, 2 lots, Sedalia, clear of incumbrance and four thousand five hundred ($4500) cash.

"(Signed)     J. M. Knaus.

"I am willing to accept above terms.

"(Signed)   S. M. Lindsey."

And that the next day another and formal contract was signed.

Further plaintiff testified that defendant and her daughter came to plaintiff's house in his absence but when plaintiff's wife was present, on the day after signing the formal contract, and got some cherries; that defendant then told plaintiff's wife she had signed the contract and had come out to get their fruit; that he saw defendant on the second or third day thereafter at the office of Mr. Smith, the agent, and that she then told plaintiff she was not going to take the

place; that he told her he did not know whether he could make her take it or not; that she said she would have to borrow the money and that she was going to back out because her son-in-law would not move out there and had asked what he would do. Defendant states he remarked to the agent, —

"Manlove, you know what the contract is, you can't blame me. There is the contract, live up to it."

He stated the defendant said nothing that day about the contract not being what it ought to be; she made no complaint, and did not mention the consideration that day; that plaintiff had been willing at all times since July 20th to make the trade. The following then occurred:

"Q. By Mr. Blain: Have you been damaged by reason of her backing out?

"By Mr. Shortridge: Are you going to undertake to prove damage? Go ahead.

"By Mr. Blain: I don't have to.

"A. Why if I hadn't been damaged, I wouldn't have sued for damages."

On cross-examination the witness stated he had since sold the property for $8500; that he didn't have to pay any commission to real estate men on the sale and the man who bought it got the commission off. He then was asked:

"Q. Then you didn't sell it for $8500? A. I got $8500 and he got the commission.

"Q. You got $8500 for the place, is that right? A. Yes, sir."

Testifying further, the witness said he got $8500 and gave the purchaser two and one-half per cent commission and that came off the purchase price.

Manlove Smith, the real estate agent involved in the deal, testified for plaintiff to the effect that plaintiff offered to trade his place for Mrs. Lindsey's Park avenue property and $5000 cash; that she made a counter-proposition to pay $4500 cash and her property; that plaintiff agreed to accept the counter-proposition; that witness wrote the pencil memorandum of agreement, after talking to plaintiff about defendant's counter-proposition; that plaintiff and defendant signed same in his presence; that the typewritten, or formal, contract was written the next day; that it was written in triplicate and that plaintiff signed all three; that he took the three copies to defendant's house, read it all to defendant and her daughter and that at the time Mrs. Lindsey, her daughter and the witness each held a copy while same was being read by him; that he read it all without any omission. He stated that plaintiff never, at any time, said he would take $4000 as the cash payment; that witness did not promise to get the money for Mrs. Lindsey; that he did not tell defendant that she could sign the contract and not be bound by it and that he did not tell her he would

not deliver a copy of the contract to plaintiff; that he left one copy with defendant and mailed another to plaintiff; that defendant did not tell him to hold the contract. On cross-examination witness testified that he had not secured plaintiff's consent to accept $4000 cash payment and denied specifically the statements and promises attributed to him in the answer.

Plaintiff's wife testified in his behalf, denying certain statements accredited to her and to defendant as set up in the answer. Ellis R. Smith, a partner of Manlove Smith in the real estate business, also testified corroborating plaintiff and Manlove Smith on all material points in respect to the preparation of the contracts.

Defendant testified in her own behalf, supporting the allegations in the answer and contradicting evidence offered by plaintiff on practically all material matters, each litigant attempting by testimony to support the allegations set forth in the pleadings.

The court refused defendant's instruction "C" which reads as follows:

"The court instructs the jury that before the plaintiff can recover the burden is on him to prove that he has been damaged, that is, that he has suffered pecuniary damage on account of the depreciation of the value of his property in question from the date of the making of the contract and the date he sold said property."

Under instructions of the court, the jury returned the following verdict: "We the jury find for plaintiff in the sum of $100."

Whereupon the court directed the jury to return to their room for further deliberation, telling them, orally, that the verdict must be for the full amount, or nothing. The jury then returned a verdict for plaintiff in the sum of $500.

In his assignments of error, plaintiff urges that the court erred in granting a new trial on account of the refusal to give defendant's instruction "C;" that said instruction did not properly declare the law on the question of damages and that its refusal was proper; that the contract between the parties provided that $500 should be the amount of liquidated damages.

It is in evidence that after failure to sell his property to defendant plaintiff sold it to another party for $8500. Therefore to permit plaintiff to recover from defendant $500 more for his property than he would have received under his contract with defendant would amount to an unreasonable forfeiture. Because the contract stipulates that $500 shall be "liquidated damages" it does not prevent it from being, in fact, a penalty under the evidence. This rule was declared in Adams v. Luckaman, 256 S. W. 103, where it was held, in effect, that in determining whether a stipulated sum, payable on breach of contract is liquidated damages or a penalty, the reasonableness of the forfeiture compared to the actual loss sustained, as well as the intention of the parties, must be considered.

It is pointed out by defendant that the contract required of her seven different things and that failure to perform any of them would entitle plaintiff to recover the $500, if it is held to be liquidated damages; that these requirements were in varying degrees of importance and there could be a breach of one or more of them without inflicting upon plaintiff more than nominal damage. To be explicit, the seven things required of defendant in the contract in evidence were: (1) The furnishing of proper abstract; (2) payment by defendant of $4500 at close of the deal; (3) conveyance to be closed on or before June 20, 1924; (4) possession before said date; (5) assignment of insurance policies; (6) execution and placing in escrow of deed, and (7) to make good the title should any defects therein be found and to pay expenses of such correction.

That these requirements were of varying degrees of importance is evident, and under the ruling in Adams v. Luckaman, supra, the forfeiture clause is a penalty and not liquidated damages. The court said (p. 104):

"The accepted rule in determining whether the stipulated sum shall be viewed as liquidated damages or as a penalty requires that the intention of the parties shall not alone be taken into consideration, but also the reasonableness of the forfeiture the party in default is to pay as compared to the actual loss suffered by the party not in default; and where there are several covenants in a contract of varying degrees of importance, and a sum is stipulated therein which is to be paid upon the breach of either or any of such stipulations, the courts are inclined to treat the same as a penalty, and in such cases, upon a breach of one or more of the covenants, to render judgment for the party not in default in such sum as will reasonably compensate for the damages he may have sustained thereby. If we examine the six covenants required of the defendants by the contract in question, it is readily apparent that there could be a breach of one or more of them without in effect damaging the plaintiff more than merely nominally, yet under the ruling of the trial court the plaintiff, upon such a breach, would be entitled to the sum of $300 as liquidated damages. We are of the opinion, and so rule, that the provision in question should be treated as a penalty and not as liquidated damages. [See Boulware v. Crohn, 122 Mo. App. 571, 99 S. W. 796, and cases therein cited.]"

In that case the court followed the rule adopted by the Supreme Court in Sylvester Watts Smyth Realty Co. v. American Surety Co., 238 S. W. 494, 499, as follows:

"It is true that the bond recites that the stipulated sum is to be paid as liquidated damages; but such recital is by no means conclusive as to the intention of the parties in that respect. It is universally held that where, as in this case, an agreement contains several stipulations of various degrees of importance, and the breaches of some would be

attended with losses difficult to be estimated, and in others the damages would be of easy calculation, the sum specified in the agreement as the amount of damages for the breach of any particular stipulation will be construed as a penalty, and not as liquidated damages, even though the parties in express terms have declared the contrary."

It is the tendency and preference of the law to regard such a stipulation as the one provocative of this controversy as a penalty rather than liquidated damages, because it may be apportioned to the loss actually sustained, and compensated for accordingly. [Tinkham v. Satori, 44 Mo. App. 659.] We hold the action of the court in sustaining defendant's motion for a new trial on this point was proper. And this includes the further holding that the court erred in refusing to allow defendant to show by evidence that plaintiff did not suffer pecuniary damage, and that the court further erred in holding the sum of $500 stipulated in the contract to be liquidated damages, when, in fact, it was a penalty.

The fourth ground upon which a new trial was granted is that the court erred in refusing to accept the finding and verdict at the hands of the jury and in telling the jury they must find for the full amount $500, or nothing, in the event they found for plaintiff. The court did not err in sustaining a motion for a new trial upon the grounds stated.

The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.