J. ALLIE JENNINGS ET AL., APPELLANTS, v. THE FIRST NATIONAL BANK OF KANSAS CITY, RESPONDENT.—30 S. W. (2d) 1049.

Kansas City Court of Appeals. May 26, 1930.

*John F. Cell* for appellants.

*Ryland, Stinson, Mag & Thomson* and *Edward M. Cox* for respondent.

BARNETT, C.—This action was tried in response to a bill of interpleader to determine the right to $2500 which had been deposited with the First National Bank of Kansas City, Missouri. J. Allie Jennings and Charles E. Jennings, her husband, brought suit against the bank to recover this amount, whereupon the bank filed a bill of interpleader wherein it is alleged that the plaintiffs, J. Allie Jennings and Charles E. Jennings, executed a lease dated April 30, 1929, whereby they leased to William T. Moreman certain real estate in Kansas City, Missouri, for a term of five years beginning May 20, 1929, with a right to an extension thereof for an additional term of five years, and for a monthly rental of $500 per month for the first 24 months and $550 per month for the balance of the term; that the contract provided that the lessee should deposit $2500 in cash with the bank to be held and paid on the last five month's rent of the leased property as it became due until the sum was exhausted, and that the deposit should become due and payable to the lessors three days after any due rent day that rent was unpaid; otherwise, the deposit should be applied to the payment of rent for the last five months of the term to be paid at the rate of $500 per month in advance by the bank. The bill prayed that the lessors and the lessee be required to interplead, and that the bank be allowed to bring the deposit into court "which the defendant hereby offers to do" and that the bank receive a reasonable allowance for its appearance. William T. Moreman entered his voluntary appearance and the plaintiffs and the defendant William T. Moreman filed a stipulation which is as follows:

"Notice is hereby waived of the intention of The First National Bank of Kansas City to file an answer in the nature of a bill of interpleader herein. and consent therefor is hereby given. Parties hereto, to-wit: Plaintiffs and William T. Moreman waive jury and agree cause be determined by the court."

Defendant Moreman filed an answer setting up his claim to the deposit and the plaintiffs filed an answer to the bill of interpleader by which they made claim thereto. No question arises upon the sufficiency of the pleadings and the answers are therefore omitted from this statement.

The evidence shows that the plaintiffs executed a lease to defendant Moreman as alleged in the bill of interpleader. The lease was introduced in evidence and contained the following provisions:

"Party of the second part agrees to deposit in escrow for five years from May 20, 1929, with First National Bank, Kansas City, Missouri, to be held by them, with a copy of this lease to apply on

the last five months' rent of this five year period, Twenty-five Hundred Dollars ($2500) in cash or Twenty-seven Hundred Dollars ($2700) worth of United States Liberty Bonds, the excess amount of bonds to allow for deflation, and it is to be expressly understood that the amount of money to be collected on these bonds shall in no event exceed $2500, as the intention of the deposit of this amount of bonds, namely $2700 is merely to secure the escrow agreement of $2500 in cash, to be held by the bank and paid on the rental of these buildings to the parties of the first part monthly as the monthly rent becomes due, until the sum is exhausted pro rata, and any excess over $2500 in cash derived from escrow fund in bank after payment of $2500 shall have been made to parties of the first part, shall be turned over and returned to party of the second part, to terminate at the end of this five year period, cost of the escrow to be paid by party of the second part; all interest on money or bonds deposited in escrow shall go to the party of the second part whenever such interest is due and payable. All money in escrow is to become due and payable to parties of the first part three days after any due rent date, that rent is unpaid, but in no event to be more than $2500 in cash, unless otherwise agreed upon by all parties.''

''It is agreed that money in escrow in the First National Bank shall be applicable to the rent for the last five months of this lease and shall be paid monthly at rate of $500 per month in advance out of this fund by the bank, and receipt therefor given the bank by parties of the first part.

Party of the second part will heat building and purchase all fuel and will furnish heat to the store above described in building occupied at present as a grocery store for rental to be agreed upon by party holding lease on grocery store and party of the second part.''

''It is understood and agreed by all parties to this lease and agreement that in the event of non-payment of rent on any rent due date, or three days thereafter, and the right to forfeit this lease shall then become operative under the terms of this lease the money or monies in escrow shall become due and payable as a whole, but in no event to be more than $2500 in cash, and that shall end with this forfeiture and collection of this money or monies, in escrow all liability of the party of the second part to the parties of the first part, or any of their representatives, agents or assigns, for any rent due on the property described in this lease, and it is expressly understood in view of this clause calling for cash forfeiture in the event of non-payment of rent that no action will be instituted by parties of the first part in any court of law or by any agent or lessee or any other person or persons related to or acting for parties of the first part. Parties of the first part agree to give twenty (20) days for removal

of all physical property and machinery of the party of the second part after such forfeiture shall have been made and effected should such action transpire, and party of the second part agrees to remove all machines and physical property installed by him or his agents within twenty (20) days after any forfeiture such as described shall have been effected, and his lease terminates. It is understood that should this non-payment of rent and subsequent forfeiture ever be effected that the lease shall automatically become immediately void and party of the second part shall not be liable for further rent monies on this lease.''

The lease provided that for the last five months' rent the lessee should pay $50 a month in order to complete the payment of $550 per month, in view of the fact that the deposit was to be applied at the rate of $500 a month. The leased property was a garage, and it was recited that parties of the first part included their good will in the lease. Moreman paid the rent for two months and then abandoned the premises and surrendered the keys to the plaintiffs who declared a forfeiture of the lease and made a written demand on the bank for the deposit, which demand was refused. The bill of interpleader was signed by Edward M. Cox as attorney for the bank. He was an officer of the bank and had formerly been a lawyer in the offices of Ryland, Boys, Stinson, Mag and Thomson, who usually acted as attorneys for the bank, and who represented the defendant Moreman in this case. It appeared that the bill of interpleader and the stipulation for waiver of trial by jury was prepared by Mr. Thomson, and Mr. Cox testified that he knew nothing about the controversy except what Mr. Thomson told him. However, the evidence further shows that Mr. Thomson, acting for Moreman, and the attorney for the plaintiffs agreed that the dispute should be adjudicated under a bill of interpleader; that Mr. Thomson presented a proposed bill of interpleader to the attorney for the plaintiffs and asked if he would waive time for filing the bill and thereupon they agreed upon the stipulation which we have set out. There is no intimation that the attorneys for Moreman had any agreement with Mr. Cox for any interest in the attorney's fee allowed by the court or that any part thereof was by them ever received. The court entered a decree by which the attorney for the bank was allowed a fee of $100 and Moreman, the lessee, recovered the balance of the deposit from the bank and by which the costs were taxed against the plaintiffs. A motion for new trial was filed and overruled and plaintiffs have appealed.

### OPINION.

Appellant contends that the $2500 deposit, though it was intended to secure the performance of the covenant to pay rent for

the last five months of the term, was also a sum to be paid in lieu of performance of the contract; that the amount was reasonable, regard being had to the length of the term and the total rent contracted to be paid and the other covenants to be performed by the lessee, including a covenant to furnish heat, and therefore the plaintiffs were entitled to the deposit as liquidated damages. It is claimed that the damages were uncertain and the contract provided that there should be no recovery of actual damages and that therefore the provision for the forfeiture of the deposit was in no sense penal. We agree that $2500 is not, *prima facie*, an unreasonable amount as liquidated damages for a failure to pay rent in the sum of $31,800. Furthermore, the use of the words "forfeiture," "forfeit and pay," "penalty" and words of like character does not conclusively establish that the sum so designated is a penalty rather than liquidated damages. [17 C. J. 938-40.] Respondents rely upon the case of Von Schleinitz v. North Hotel Co., 23 S. W. (2d) 64, but it is not controlling. In that case our Supreme Court held that upon abandonment of leased premises by the tenant the landlord has an election either to permit the premises to remain vacant until the end of the term, and then sue for recovery of the stipulated rents, or he may mitigate the loss of rents by getting what he can out of the premises and recover the balance from the tenant. But the re-letting must be upon notice to the tenant that it is for the latter's benefit and to minimize the damages, and that the landlord does not relinquish his claim to the rent. If the landlord accept possession after abandonment by the tenant without such notice, the acceptance constitutes a termination of the contract, and the landlord is entitled to no further rents from the tenant, but can only recover for the breaches of the contract which occurred prior to the termination of the lease. In that case a landlord had unconditionally accepted the surrender of the premises without giving notice that it would re-let the premises only for the purpose of mitigation of damages and without intention to terminate the lease, and retained a deposit of $17,500 which had been made under a provision in the lease which recited that the lessee should pay said sum in advance to be applied upon the last rental to accrue under said lease, and that should the lease in any way terminate without any fault upon the part of the lessee the said deposit or so much of the same as might be due to the lessee should be repaid. The landlord accepted the surrender before any of the rent to which the deposit was to be applied was due. The Supreme Court held that the lessee was entitled to the deposit because the rent to which it was to be applied never became due.

The fact remains that at the time of the abandonment and before the unconditional acceptance of the surrender the landlord had the right to hold the tenant for the payment of the entire rent stipulated

in the contract or, upon proper notice, for damages for failure to pay. This being true, we think it would have been competent for the parties to contract that in lieu of the right of the landlord to accept the surrender conditionally and for the benefit of the tenant, a reasonable amount should be paid as liquidated damages, and that the landlord should have no other right of recovery under the lease. The Supreme Court did not hold that such a contract could not have been enforced, but no such agreement was made. Therefore, the disposition of this case must turn upon the question as to whether or not the lease before us provides for a penalty or for liquidated damages. Whether a contract stipulates for the one or the other depends upon the intention of the parties and the reasonableness of the agreement. If the parties did not attempt to agree upon what the damages would probably be, but only intended to insert a provision for the purpose of deterring a party from breaching his contract and to penalize him in the event he should do so, then the contract provides for a penalty. But if it appears that the parties in good faith agreed upon a sum as the damages which would probably ensue if the contract should be breached, then the stipulation is for liquidated damages, provided the agreement is reasonable. If the sum agreed upon be unreasonable, wholly disproportioned to the amount of the probable damages and calculated to work oppression, then the stipulation is penal, without regard to the intent of the parties.

With these principles in mind it is apparent that the fact that a contract provides that the parties shall forfeit a deposit, though not conclusive, is a circumstance to be considered in arriving at the intent of the parties. The language of the lease, "it is expressly understood in view of this clause calling for a cash forfeiture in the event of non-payment of rent" is some evidence that the contract was understood by the parties to provide for a penalty. The provision that upon collection of the deposit the landlord should have no further remedy against the tenant would lend weight to a contrary conclusion if that provision had been absolute rather than conditional. But the contract provides that for a failure to pay rent "*the right* to forfeit this lease shall become operative", and that the lease should automatically become void and the lessee should not be liable for further rent" should this non-payment of rent *and subsequent forfeiture* ever be effected." There is no provision that non-payment of rent shall operate automatically as a forfeiture. It therefore appears that if non-payment of rent should occur, the landlord might then elect to refuse to accept a surrender and compel the tenant to hold him harmless from a failure to pay rent for the entire term, or to declare a forfeiture and seek to hold the deposit. In determining whether the amount of a deposit is to be treated as

liquidated damages or as a penalty, the agreement is to be interpreted as of its date, not as the date of its breach. [Seidlitz v. Auerbach, 230 N. Y. 167; 17 C. J. 935.] If they provided for an arbitrary forfeiture when the contract was executed, they provided for a penalty, even though at the time of the breach, the amount would not have been unreasonable as liquidated damages.

If there had been a provision for a forfeiture rather than for a right in the landlord to declare a forfeiture, the circumstances existing at the time that the lease was executed would be controlling in determining whether or not the stipulation was reasonable or oppressive. By the contract before us the landlord stipulated for the right to wait until the breach occurred to determine whether he would accept a sum certain in lieu of the amount of his actual damages. If, at the time of breach, it appeared that the actual rental value of the property was as much or more than the rental value as fixed by the lease, or that the amount of rent which was to accrue under the lease was much less than the deposit, he could forfeit the lease and claim the deposit, much to his benefit. But if it appeared that he was going to suffer damage in excess of the amount of the deposit, he need not declare a forfeiture, but could hold the tenant upon the lease. In Hargrove v. Bourne, 150 Pac., 121, the Supreme Court of Oklahoma said that a lease which provided that a lessee should deposit $500 in a bank as security to the lessor and that in the event the lessee should not comply with said contract, the lessor might, *at his option*, hold said sum and demand possession, provided for a penalty. In Caesar v. Rubinson, 174 N. Y. 492, the court construed a lease which provided for a deposit of $1000, and in which it was stipulated that the amount specified therein should not be regarded as liquidated damages if the landlord's damages exceeded that sum, but in such event it should be applied upon the actual damages, whatever they were found to be. The court said that it was difficult to believe that the parties intended that the deposit should have one character as to the landlord and another character as to the tenant; that such a stipulation was not binding on both parties and that the lease provided for a penalty. The only difference between the instant case and the New York case is, that in the latter case the lease provided in express terms that the landlord was not required to accept the stipulated sum in satisfaction of his claim unless that was to his profit; whereas, in the case before us, the landlord reserved the right to do the same thing without expressly saying that he did. In our opinion the option to take either a sum certain or actual damages and to make the election at the time of the breach works oppressively, and for that reason the stipulation is penal in its nature, whether the parties intended to provide for liquidated damages or not.

We are of the opinion that the parties did not attempt to agree upon the amount of the probable damages. A stipulation for the forfeiture of one lump sum on account of the breach of a number of covenants, some of grave and others of minor importance, and some of which would result in damage hard to estimate and others in damage easy to calculate, is regarded as a provision for a penalty. [Sylvester Watts Smyth Realty Co. v. American Surety Co., 292 Mo., 423, 283 S. W. 494; Knaus v. Lindsey, 280 S. W. 713; Adams v. Luckaman, 256 S. W. 103.] We think it follows that the provision for the forfeiture of a lump sum upon the termination of a lease without regard to the time of the breach of the covenant must also be regarded as penal, because it appears that the amount of the deposit was not determined by an effort of the parties to determine what the actual damages would probably be. We cannot presume that the parties considered that the damages would probably be as great because of a termination of the lease when it had six months to run as if a breach had occurred at the beginning of the term. There was no attempt to graduate the amount according to the length of the unexpired part of the term. In the case of Potter v. McPherson, 61 Mo. 240, our Supreme Court considered a contract whereby B agreed to construct a railroad and A agreed to pay a certain amount therefor in monthly installments as the work progressed, with a provision that ten per cent. should be reserved until the completion of the work as security for the faithful performance of the contract; and in case of a breach of the agreement by B the amount reserved was to be absolutely forfeited to A. The court said the 10 per cent. reserve was not in the nature of liquidated damages, but was simply a sum placed by the contract in the hands of the defendant as security for the faithful performance of the completion of the contract, notwithstanding it was stipulated that it should be forfeited to the defendants upon a breach. The court said:

"To hold otherwise in such a case would produce the grossest inequality and injustice. The amount forfeited might bear no just relation to the damages suffered. The more nearly the contract approached completion, the greater would be the reserve, and the less would be the damage. As the damages diminished the sum forfeited would increase."

We hold that the same inequality and injustice is inherent in a contract which provides that as the damage diminishes the sum to be forfeited shall remain constant. It has been held that if there is a stipulation for the payment of a fixed unvarying sum without regard to the date of the breach, when in the nature of things the date of the breach would be all important in determining the element of actual damages ensuing, the stipulation must be held one for a penalty. [8 R. C. L., Section 114, p. 565; Florence Wagon Works v. Salmon (Ga.), 68 S. E. 866; McLeod v. Russell, 110 Pac. 626.]

Appellant has cited some New York cases, the case of Galbraith v. Wood, 124 Minn. 210, 144 N. W. 945, and two Washington cases in support of his contention that the lease provides for liquidated damages. Whatever may have been the rule laid down by earlier New York cases, the later cases are against the appellant. [Shud v. Shepard, 122 N. Y. 397; Caesar v. Rubinson, 174 N. Y. 492; Seidlitz v. Auerbach, 230 N. Y. 167.] The Minnesota case holds that where rent has been paid in advance and there is a breach of the covenant by the lessee, the lessor may elect to treat the lease as terminated without waiving the right to retain the deposit. The case is in conflict with the decision of our Supreme Court in Von Schleinitz v. North Hotel Co., supra. The two Washington cases apparently support the doctrine that the provision for a lump sum is liquidated damages for the breach of the covenants of the lease at any time is valid. They do not mention the principles herein discussed, and they are contrary to the decisions which we have mentioned, and the cases of Cunningham v. Stockton, 81 Kans. 780; Wilson v. Agnew, 136 Pac. 96; Mount Airy Milling & Grain Co. v. Punkles, 118 Md. 371, 84 Atl. 533; Magee v. Labell, 1 R. 9 C. P. 115.

Appellant contends that the court erred in allowing an attorney's fee because the bank was not entirely indifferent between the conflicting interests, but furthered the interests of the defendant Moreman, and because the attorney for Moreman usually acted as the attorney for the bank and actually drew the bill of interpleader. There is not the slightest evidence that the bank or its attorney did anything which was even remotely calculated to advance the interest of Moreman as against the plaintiffs. If the plaintiffs had asked us to consider the fact that Moreman's attorney drew the bill of interpleader that was filed by Mr. Cox to determine whether or not too great an allowance had been made, we could have considered the matter; but there is no contention that the allowance was excessive. Appellants merely claim that no allowance whatever should have been made. The only cooperation that the evidence discloses was between the attorney for Moreman and the attorney for plaintiffs. They agreed that the case should be tried under a bill of interpleader. One of these attorneys drew the bill and submitted it to the other for his approval. When Mr. Cox filed this bill he merely carried out the desires of the contending parties. We do not content ourselves with saying that nothing was done which was calculated to prejudice the rights of either of the contending parties. We have scanned the record carefully as we should do whenever a question is raised against the conduct of an attorney, an officer of the court, and we have been unable to discover anything which raises a suspicion that either Mr. Cox or Mr. Thomson did anything even slightly unethical.

 

At the close of the testimony plaintiffs asked the court to require the bank to pay the deposit to the clerk of the court. Defendant Moreman objected and the objection was sustained. The objection was not made by the stakeholder, and the right to attack the bill of interpleader no longer existed, as both the contenders had submitted their evidence in support of their claims to the deposit as prayed for in the bill. The record shows that plaintiffs are not entitled to the deposit, and even if the court erred, that error could not harm any one but Moreman. The decree should be affirmed. The Commissioner so recommends. *Boyer, C.*, concurs.

PER CURIAM:—The foregoing opinion of BARNETT, C., is adopted by the court. The decree is affirmed. *Bland* and *Arnold, JJ.*, concur; *Trimble, P. J.*, absent.