Harley E. WILT et al., Respondents,

v.

Melton V. WATERFIELD, Appellant.

No. 44058.

Supreme Court of Missouri.

Division No. 2.

Nov. 8, 1954.

Rehearing Denied Dec. 13, 1954.

· Irving Achtenberg, Kansas City, for appellant.

Gresham, Boughan & Whipple, Walter J. Gresham, Kansas City, for respondents.

SAMUEL A. DEW, Special Judge.

Plaintiffs sued to recover damages for alleged breach of a real estate sales contract. A jury was waived and the court rendered a judgment for the plaintiffs in the sum of $7,000 principal, and $700 accrued interest. Defendant has appealed.

Defendant filed a third party petition against a third party defendant, but upon motion of the plaintiffs, a separate trial of the plaintiffs' cause was ordered, resulting in the foregoing judgment and appeal.

In this court the plaintiffs, as respondents, have moved for a dismissal of the appeal for failure to comply with 42 V.A.M.S. Supreme Court Rule 1.08. It is alleged that defendant has failed to furnish a fair statement of the facts and has omitted page references to the transcript, where the rulings complained of appear. The transcript is short and in his reply the defendant has substantially corrected the omissions mentioned. The motion to dismiss is overruled.

It is alleged in the plaintiffs' petition that defendant was the owner of an 825 acre farm in St. Clair County, Missouri; that he listed the same for sale; that he entered into a written contract to sell the farm to the plaintiffs for $19,000, and plaintiffs paid the defendant $1,900 to apply on the contract price; that thereafter defendant breached the contract and sold the farm to third parties to plaintiffs' damage in the sum of $10,000.

Defendant filed a general denial to plaintiffs' petition and also filed a third party petition against one Charles Morgan and the St. Clair Investment Company, a corporation, alleging that they were liable to defendant for any amount adjudged against defendant in favor of the plaintiffs, for the reason that such third party defendants, for the purpose of defeating the performance of his contract with the plaintiffs, fraudulently and willfully represented to defendant that he was not bound on his contract with plaintiffs; that plaintiffs were not bona fide purchasers; that their contract was invalid; that defendant's only liability on his contract with plaintiffs, if any, was $1,900 for a real estate commission, which, when paid, would terminate the plaintiffs' contract; that being inexperienced in such matters and relying upon such representations, defendant was induced to execute a deed to the farm in blank, which Morgan delivered to third parties. Defendant asked judgment against the third party defendants for $500 attorneys' fees, for $5,000 damages, and for any amount adjudged against the defendant on plaintiffs' claim. As stated, the court ordered a separate trial of the original suit. There-

upon the defendant filed an amended answer to plaintiffs' petition, alleging further that the contract between the plaintiffs and defendant was void and unenforceable under the Statute of Frauds, Section 432.010 RSMo 1949, V.A.M.S.

According to the evidence, the defendant Waterfield was the owner of a farm of 825 acres in St. Clair County, Missouri. He owned no other farm in that county. On June 18, 1951, he entered into a written agency agreement with Earl Allen, a real estate agent, for the sale of the above farm. The agreement bore the title of United Farm Agency "Property Listing Agreement" and purported to be entered into at Weaubleau, Missouri. In the first line appeared the words: "Listing No. 611". The form included some seventy questions with blanks for answers thereto. Among the questions and answers tending to identify the property were those stating, in effect, that the post office address of the property was Weaubleau, Missouri; acreage, 825; price, $19,000; located in St. Clair County, Missouri, on a black top road two miles from Highway 54, adjoining Weaubleau creek, and two miles from the Village of Weaubleau, Missouri; sixty-two miles from the City of Springfield; contained a four room frame house, painted yellow; roof, composition; front porch, 6 x 20; maple trees on level site; barn, 36 x 40, frame in fair condition, roofed with shingles; poultry house, size 10 x 20, and "Another six-room house—poor". The listing agreement further provided, among other things, for the payment of a commission of ten per cent to the agent for a sale to a purchaser procured by the latter on the terms stated.

Plaintiffs, being interested in purchasing farm property in the vicinity, and seeing defendant's farm advertised, contacted Earl Allen, agent above mentioned, and entered into a written contract to purchase it. This contract, dated September 5, 1951, recited that it was being made "on property known as No. 611, United Farm Agency list at Weaubleau, Missouri", between the defendant Waterfield and the plaintiffs, recited that the consideration was $19,000, to be

fully paid, as provided; that the farm contained 825 acres; that plaintiffs would pay the 1951 taxes and would pay $1,900 in cash on execution of the contract and, upon delivery of deed, would assume a mortgage for $17,100. The contract contained the following printed paragraph: "If either party hereto fails or neglects to perform his part of this agreement, he shall forthwith pay and forfeit as liquidated damages to the other party a sum equal to ten percent of the agreed price of sale, except that if said agreed price is less than $2,000, said sum shall be $200". The contract further provided for a certain division of current crops, the furnishing of title and for delivery of deed and possession on or before February 20, 1952, at the office of the St. Clair Investment Company at Osceola, Missouri. It was signed by defendant Melton V. Waterfield as first party, and Harley E. Wilt and Gladys L. Wilt, as second parties, each signature being witnessed by Earl H. Allen.

After signing the contract to sell to the plaintiffs, defendant took plaintiffs to the bank at Osceola, Missouri to get the abstract. Defendant owed the bank $4,500, secured by mortgage on the farm. Charles Morgan at the bank refused to surrender the abstract until he found out if plaintiffs' check to Allen would clear. Defendant then returned home because, as he testified, "That's all I could do". He said he could not recall telling the plaintiffs their deal was off or that their contract was no good. Some time thereafter, defendant met Earl Allen, but did not tell Allen of the sale of the farm to another party. Allen learned from Clell Windon that Windon had since purchased the farm from defendant. The evidence is that within a few days after the signing of the plaintiffs' contract, defendant, through Mr. Morgan of the bank, had sold the farm to Clell Windon for $26,000, the grantee's name being inserted later by Morgan at Osceola. Defendant testified that Morgan told him the total sale price under the Windon contract was $22,000, but he learned from Windon later that it was in fact $26,000. He also found out from the recorder's office that $19.55 in

revenue stamps placed on his deed had to be increased. He could not recall Morgan's explanation for the difference between the reported sale price of $22,000 and the actual sale price of $26,000. Morgan paid Allen $1,900 commission. Defendant paid Morgan $1,900 as a commission for the second sale, and defendant received about $17,000 out of the deal. No accounting appears for the remainder of the $26,000.

Plaintiffs offered the defendant's third party petition in evidence. This was admitted over the defendant's objection that the petition did not constitute admission against interest, and that it was not admissible under the Statute of Frauds.. Several witnesses were produced by plaintiffs to establish the reasonable market value of the farm, which defendant contracted to sell to the plaintiffs, and their estimates varied from $18,000 to $26,000. The plaintiff Harley E. Wilt testified that he did not intend to buy the farm for resale, but to live upon it and farm it.

The defendant introduced the deposition of Clell Windon. He testified that he purchased the farm through Charles Morgan, an agent for defendant, on September 17, 1951; that a contract was prepared in written form, but for some reason not known to him it was never signed; that he paid $26,000 for the land, $21,000 in cash, and assumed a loan of $4,500. He said he received a receipt for the checks from Mr. Morgan. He had been shown the farm by one Burl Axom, who said it could be bought for $22,000. Axom contacted Morgan in Osceola, took the witness there and—"Before I got out of there I paid $21,500 and assumed the loan ($4,500)". Morgan told him he was defendant's agent. Witness said he assumed he was buying from recent previous purchasers, whose names he did not then know. Axom was to get five percent commission. Witness said he believed that he had paid $10,000 too much for the farm.

█ Defendant's first point in this appeal is that the court was in error in overruling defendant's motion for a finding that the plaintiffs' contract was void and

294

unenforceable under the Statute of Frauds, and for judgment. The motion was a request for judgment at the close of plaintiffs' case and upon its denial by the court, the defendant proceeded to introduce evidence on the merits of the case. The request was not renewed at the close of all the testimony. As this court said in Stephens v. Kansas City Gas Co., 354 Mo. 835, 850, 191 S.W.2d 601, 607, when such a motion is made and denied at the close of the plaintiff's testimony the error, if any, of such ruling is waived by the introduction of evidence thereafter by the party making such motion.

Defendant's next two points are, respectively, that the court erred in admitting parol evidence to supply the defective description of the farm in plaintiffs' contract, and in admitting the Listing Agreement for that purpose. It is asserted that the Statute of Frauds, Section 432.010 RSMo 1949, V.A.M.S., requires that the alleged contract for sale of land contain such a description of the property that it may be identified with reasonable certainty. It is urged that the words "Property known as No. 611 United Farm Agency List at Weaubleau, Missouri", and "825 acres", are not sufficient; that the Listing Agreement did not supply the essential description; that it did not refer to the contract nor did the contract refer to the Listing Agreement; nor was any "list" offered in evidence; that in the Listing Agreement only the county and state where the land was located were shown, omitting the section, township and range; that the other data shown does not sufficiently identify the defendant's farm. The facts are that the Listing Agreement contained the identifying "United Farm Agency" listing number "611"; the location as to county and state, the acreage, name of owner, description of the improvements, and distances from named towns and creek. The subsequent contract referred to the property as that "known as No. 611, United Farm Agency list at Weaubleau, Mo." Defendant admitted he owned the same farm and that he owned no other farm in St. Clair County, Missouri; that it contained 825 acres. By his third party

petition he admitted that it is the same farm which he later conveyed to Clell Windon because of the false representations of the third party defendants that his previous contract with the plaintiffs was invalid.

■ If a contract for the sale of land fails to describe the land sufficiently to meet the requirements of the Statute of Frauds, it is not void, but voidable. Huttig v. Brennan, 328 Mo. 471, 490, 41 S.W. 2d 1054. If there is sufficient compliance with the Statute of Frauds, the contract is valid and the statute would not apply. The test is, What is sufficient identification of the property, which is the subject matter of the contract? This was answered in Herzog v. Ross, 355 Mo. 406, 409, 196 S.W.2d 268, 270, 167 A.L.R. 407: " 'The rule may be stated thus: The land need not be fully and actually described in the paper so as to be identified from a mere reading of the paper; but the writing must afford the means whereby the identification may be made perfect and certain by parol evidence.' "

In Ray v. Wooster, 270 S.W.2d 743, 746, recently handed down by this court, a contract for the sale of a farm described as " 'my farm known as Oak Hill Farm,' " was held sufficient in view of the evidence that the defendant's farm was generally known in the community by that name, and that defendant owned no other farm. The court said in that case: "The law does not require that a contract for the sale of land shall in itself be wholly sufficient to identify the property. The writing is sufficient if it clearly reveals the intent of the parties with reference to the particular tract which is the subject matter of the sale and furnishes the means of its identification; or, as some cases hold, if it provides the 'key' to the identification— the applicable principle being that that is certain which can be made certain. [Citing cases.]"

■ We rule that under the record, the parol evidence was proper and sufficient to clarify the description appearing in the contract of sale and that the Listing Agreement was properly admitted in evi-

·dence for that purpose. We rule further, under the authorities, that the description in the contract as explained and clarified by the evidence, is sufficient identification of the land intended to be sold to meet the requirements of the Statute of Frauds.

Defendant next assigns as error the failure of the court to find that the plaintiffs are limited to liquidated damages in the amount of $1,900. He insists that the paragraph quoted limits the recovery to liquidated damages, and not to exceed $1,900. Plaintiffs contend that this clause is a penalty provision and does not limit the plaintiffs as to their actual damages.

■■■ The courts are not justified in construing a contract plainly fixing a stipulated amount as damages accruing to one party by the violation of the contract by the other party and designating the same to be "liquidated damages", to mean other than what those words purport to mean upon their face, unless the sum fixed is shown to be so disproportionate to the amount of any such damage reasonably to be contemplated as to be oppressive. Morse v. Rathburn, 42 Mo. 594, 603; Long v. Lackawanna Coal & Iron Co., 233 Mo. 713, 741, 136 S.W. 673; Thompson v. St. Charles County, 227 Mo. 220, 240, 126 S. W. 1044. The intention of the parties in each case governs the construction. The provision must be fixed on the basis of compensation, otherwise it is construed as a penalty clause designed primarily to compel performance. Buchanan v. Louisiana Purchase Exposition Co., 245 Mo. 337, 347, 348, 349, 149 S.W. 26. To arrive at the intent of the parties, a court may consider whether the agreement contains various stipulations of various degrees of importance, the breaches of which would be easy to calculate in damages as to some and difficult as to others, in which event the sum specified would be construed as a penalty and not as liquidated damages, "even though the parties in express terms have declared the contrary." Sylvester Watts Smyth Realty Co. v. American Surety Co. of New York, 292 Mo. 423, 441, 238 S.W. 494, 499; Jennings v. First Nat. Bank of Kansas City, 225 Mo.App. 232,

238, 30 S.W.2d 1049. "Where the sum named in a contract to be paid in a breach is held to be a penalty and not liquidated damages, the amount of recovery is only the actual damages sustained." 25 C.J.S., Damages, § 116b, p. 704. The courts tend to construe such stipulations, if doubtful, as punitive in nature. Adams v. Luckaman, Mo.App., 256 S.W. 103.

Plaintiffs point out that under the contract the defendant was bound to convey the full 825 acres; to share the 1951 crops of corn, oil beans and hay; to hold plaintiffs' check until September 19; to cut none of the lespedeza crop; to furnish abstract of title, to deliver deed and possession by February 20. He says these are of varying degrees of importance and would each give cause to a different amount of damages in case of failure to perform, bearing no relation to the amount fixed by the contract.

In the early case of Morse v. Rathburn, supra, the contract was for the sale of a farm to defendant for $21,000, of which $9,000 was to be paid on a date fixed and certain mortgage notes to be executed and delivered for the remainder, whereupon the plaintiff, seller, was to give a good and sufficient deed for the property. The contract provided: "And the said parties to this agreement bind themselves that either party failing to comply with its provisions shall forfeit and pay to the other the sum of two thousand dollars.". The defendant refused to comply with the contract when proffered a deed by the plaintiff, and suit was brought to recover the $2,000, plaintiff contending that such sum was agreed upon as liquidated or stipulated damages. This court held that the intent of the parties was to agree on the compensation; that the things agreed to by the parties constituted one entire transaction, and that the amount fixed was not disproportionate either to the actual or presumed damage. The provision was construed as for liquidated damages and not as a penalty. The court, however, pointed out, 42 Mo. at page 601: "The general rule may be formally stated that when the agreement contains several distinct covenants, on which there may

be divers breaches, some of an uncertain nature and others certain, with one entire sum to be paid on breach of performance, then the contract will be treated as one for a penalty, and not for liquidated damages".

It seems apparent that if the defendant in the case at bar had failed or neglected to perform that part of his agreement to convey the full acreage of 825 acres, or failed to share a full one-third of all corn, oil beans and wild hay then on the farm, or refused to hold plaintiffs' check until September 19, or failed or refused to deliver his deed and possession on February 20, the damages accruing thereby to the plaintiffs might in some of such instances be entirely disproportionate to the $1,900 stipulated in the contract. Being so, such arbitrary amount would constitute a penalty rather than a provision for the damages sustained.

A very similar set of facts obtained in Adams v. Luckaman, supra, wherein the contract of sale stipulated $300 "as liquidated damages" for breach of any of the vendor's covenants, which included no less than six in number. These included placing a deed in escrow on a certain date, furnishing an abstract certified to a certain date, correction of any defect in title, giving possession on or before a certain date, and keeping the buildings insured for the full amount of insurable value. After setting forth the rules pertaining to the construction of such clauses as hereinabove discussed, the court said, 256 S.W. at page 104: "If we examine the six covenants required of the defendants by the contract in question, it is readily apparent that there could be a breach of one or more of them without in effect damaging the plaintiff more than merely nominally, yet under the ruling of the trial court the plaintiff, upon such a breach, would be entitled to the sum of $300 as liquidated damages. We are of the opinion, and so rule, that the provision in question should be treated as a penalty and not as liquidated damages. See Boulware v. Crohn, 122 Mo. App. 571, 99 S.W. 796, and cases therein cited."

It is our opinion that in the instant case the provision in question pertaining to forfeiture in event of failure or refusal to perform, and fixing $1,900 as liquidated damages therefor, was in the nature of a penalty, and that the plaintiffs are not prevented thereby from recovering their actual damages for the breach established.

Lastly, defendant contends that the court erred in awarding plaintiffs any damages, there being no evidence thereof and plaintiffs having suffered none. The conceded fact is that defendant agreed to sell his farm to the plaintiffs for $19,000 and without legal excuse, failed and refused to do so, but did sell it shortly thereafter to another for $26,000. The plaintiffs were entitled to their bargain. Defendant is in no position to deny that the market value of the farm was $26,000, for which he sold it, pending his contract with the plaintiffs. There is other evidence that the market value of the farm was $26,000. The plaintiffs in such case are entitled to damages in a sum equal to the difference between the unpaid part of their agreed purchase price and the market price of the land. "Under the rule generally prevailing in the United States, however, all these distinctions are unimportant, and the only rule defensible on principle, allowing the purchaser the difference between so much of the contract price as is unpaid and the market price of the land, is applied in every case where the vendor breaks his contract without legal excuse". Williston on Contracts, Vol. 5, page 3906, Section 1399.

Plaintiffs paid $1,900 which would leave $17,100 unpaid on the agreed purchase price. There was substantial evidence that the market value was $26,000. On that basis, the difference between the unpaid part of the purchase price and the actual value was $8,900. The verdict was for $7,000, well within the proper measure of damages. Judgment affirmed.

LEEDY, Acting P. J., ELLISON, J., and ANDERSON, Special Judge, concur.