221 F.Supp.2d 1016 (2002)
State of MISSOURI ex rel. Jeremiah W. ("Jay") NIXON, Attorney General of Missouri, Plaintiff,
v.
PRUDENTIAL HEALTH CARE PLAN, INC. Community Plan, Defendant.
No. 4:00-CV-1327 (CEJ).
United States District Court, E.D. Missouri, Eastern Division.
September 13, 2002.
Joel E. Anderson, Charles W. Hatfield, Attorney General of Missouri, Assistant Attorney General, Jefferson City, Mark E. Lupe, University of Missouri, General Counsel's Office, Columbia, Matthew M. Moak, St. Louis City Counselor's Office, Problem Properties Unit, St. Louis, for Jeremiah Jay Nixon, State of Missouri ex rel., Attorney General of Missouri, plaintiff.
*1017 Lewis R. Mills, Richard J. Pautler, Jennifer D. Baetje, Laura M. Jordan, Thompson Coburn, St. Louis, for Prudential Health Care Plan, Inc. Community Plan, defendant.

MEMORANDUM AND ORDER
JACKSON, District Judge.
This matter is before the Court on defendant's motion for partial summary judgment. Plaintiff opposes the motion, and the issues are fully briefed.
In June 1997, the parties entered into a contract under which defendant Prudential Health Care Plan, Inc. (Prudential) agreed to provide health care to Medicaid recipients. The contract incorporated federal regulations regarding periodic screening of children for exposure to lead. The State of Missouri alleges that Prudential failed to conduct sufficient testing to meet the federal requirements, and brings this breach of contract action seeking injunctive relief and damages. Specifically, the State seeks to recover the premium payments it made to Prudential for covered children. In addition, the State seeks "an amount equal to the additional costs for medical care, education, and assistance in daily living" which the State asserts it will incur as a result of defendant's alleged failure to timely diagnose and treat elevated lead levels. The State also seeks injunctive relief requiring Prudential to perform the contract requirements.
In its present motion, Prudential contends that the State's damages are limited by a liquidated damages provision in the parties' contract. The State disputes Prudential's interpretation of the provision in question. Alternatively, the State asserts that Prudential's reading, if applied, renders the provision unenforceable. Prudential also contends, and the State does not disagree, that the request for injunctive relief is moot as Prudential no longer provides Medicaid services for the State.

I. Background

On April 4, 1997, the State published its Request for Proposal, seeking bids from Health Maintenance Organizations (HMOs) interested in becoming Medicaid providers. Under this arrangement, HMO providers would agree to provide specific services to Medicaid enrollees in return for fixed periodic, or "capitated," payments per enrollee. Among the services the HMOs were to provide was periodic screening for children for lead poisoning.
On April 14, 1997, Prudential submitted its proposal, which incorporated the terms and conditions of the RFP. The State accepted Prudential's bid on June 26, 1997. The original contract period of one year was renewed twice, the maximum permitted by the contract; the contract thus was in force from September 1, 1997 through August 31, 2000.
The relevant contract provisions are as follows:
2.26 Remedies for Violation, Breach or Non-Performance of Contract:
Upon receipt by the state agency of evidence of substantial noncompliance by the health plan with any of the provisions of the contract, the State reserves the right to suspend or limit enrollment or reduce or suspend monthly premium payments until the condition of noncompliance has been remedied. The State reserves the right to resort to other remedies provided by law and to terminate the contract.

2.26.1 Liquidated Damages: The State acknowledges that in the event of breach of the contract, it would be difficult to measure damages. Therefore in the event of any breach of the terms of the contract by the health plan, liquidated damages may be assessed against the health plan in an amount equal to the costs of obtaining alternative health benefits for the *1018 member(s). The damages shall include the difference in the capitated rates that would have been paid to the health plan and the rates paid to the replacement health plan. The State may withhold from payments to the health plan for liquidated damages until such damages are paid in full.
* * * * * *
2.26.4 Withholding of Capitation Payments and Recovery of Damage Costs: The State may withhold portions of capitation payments or otherwise recover damages from the health plan [for failure to provide medically necessary services or perform a contract obligation].
* * * * * *
d. In any case under this contract where the State has the authority to withhold capitation payments, the State also has the authority to use all other legal processes for the recovery of damages.

e. In any case where the State intends to withhold capitation payments or recover damages through the exercise of other legal processes, [it must provide Prudential with an opportunity to cure its failure to perform],
* * * * * *
2.26.7 Remedial Actions: The State may pursue all remedial actions with the health plan that are taken with fee-for-service providers. The State will work with the health plan and the health plan providers to change and correct problems and will recoup funds only if the health plan fails to correct a problem within a timely manner.
(bold emphasis in original; underlined emphasis added).
Prudential contends that § 2.26.1 limits the State's recovery in this action, if any, to the difference in the costs of capitated payments to Prudential and to an alternative provider. The State, relying on the underlined portions of the above excerpts, contends that § 2.26.1 is an option the State may choose to enforce and that the contract provides alternate measures for damages. The State similarly argues that the provision applies only to direct damages and does not limit its ability to obtain consequential damages. Finally, the State argues that, in the event the Court concludes that defendant's interpretation of § 2.26.1 is correct, it results in an unconscionably small amount of damages and the provision is thus unenforceable.

II. Discussion

Missouri has adopted the Restatement of Contracts rules regarding liquidated damages. Hawkins v. Foster, 897 S.W.2d 80, 85 (Mo.Ct.App.1995). These rules provide that for a liquidated damages clause to be valid, (1) the amount fixed as damages must be a reasonable forecast for the harm caused by the breach and (2) the harm must be of a kind difficult to accurately estimate. Paragon Group, Inc. v. Ampleman, 878 S.W.2d 878, 881 (Mo.Ct. App.1994). A liquidated damages provision fixing unreasonably high damages is unenforceable as a penalty while one fixing unreasonably low damages is unenforceable as unconscionable. Hawkins, 897 S.W.2d at 85. A valid liquidated damages clause precludes recovery for actual damages. Germany v. Nelson, 677 S.W.2d 386, 388 (Mo.Ct.App.1984).
The State first argues that, by its own terms, § 2.26.1 provides one option the State "may" select in the event a provider breaches the contract. Under the State's reading, the provision merely quantifies the minimum amount of damages to *1019 which the State would be entitled in the event it chooses not to try to prove actual damages. Nothing in the provision, the State contends, prohibits it from seeking greater damages. The State similarly contends that the other quoted provisions reserve its right to seek consequential damages beyond those in § 2.26.1.
Section 2.26.1 is the sole contract provision addressing the amount of damages the State may recover in the event of a breach by an HMO. The State, which drafted the contract, entitled the provision "Liquidated Damages." While the label is not dispositive, it is indicative of the parties' intentions. Diffley v. Royal Papers, Inc., 948 S.W.2d 244, 247 (Mo.Ct. App.1997). See also Wilt v. Waterfield, 273 S.W.2d 290, 295 (Mo.1954) (courts must not construe a contract setting "liquidated damages" to mean other than what those words purport to mean on their face unless the fixed sum is shown to be so disproportionate to any reasonably contemplated damage amount as to be oppressive). The provision plainly states that determining the amount of damages would be difficult, the classic reason for including a liquidated damages provision in a contract. Thus, it is clear that the provision is what it purports to be: a liquidated damages clause. Nothing in the provision itself indicates that the State reserved the option to seek damages beyond those specified by § 2.26.1. And, contrary to the State's assertion, the other quoted provisions preserve not the State's right to seek greater damages but the right to resort to remedies beyond withholding capitated payments, including injunctive relief to obtain specific performance.
The State alternatively argues that the amount it can recover under the liguidated damages provision is unconscionably low and thus § 2.26.1 is unenforceable. The evidence shows that Prudential received the highest capitated premium payments for children between one and six years of age and only slightly less than the highest rate for children from birth to 12 months. Thus, the State would have paid an alternative provider the same amount or less than what it paid to Prudential. The liquidated damages amount thus will be zero for older children and very little for infants.
Prudential counters that the provision was a reasonable forecast for the harm caused by the alleged breach. If, after notice and an opportunity to cure, Prudential still failed to meet its contractual obligations, the State could transfer responsibility for lead testing to a third party. Certainly, there is no suggestion that, in the face of a medical provider's continued breach, the State would have the option of foregoing federally mandated treatment to children altogether. Under § 2.26.1, Prudential then would be liable to the State for the increased cost, if any, of having the service provided by a third party, thereby making the State whole.
The State also argues that it will bear future costs to treat children with undiagnosed lead poisoning. The State's undisputed evidence indicates that chelation treatment for lead poisoning costs at least $6,000 per child. However, there is no evidence that the State, rather than Prudential's successor, bears that cost. The State also contends that untreated lead poisoning contributes to learning disabilities and behavior disorders that may cost the State hundreds of thousands of dollars per child. This argument seems to presume that children whose high lead levels should have been detected by Prudential remain untreated. Even if the State establishes that irreparable harm was caused in some children by Prudential's failure to detect and treat lead poisoning during the contract period, the future harms the State alleges are affected by multiple factors, *1020 including ongoing environmental exposure to lead. Thus, damages arising from Prudential's alleged failure to test children during the three-year contract period are highly speculative.
The Court finds that § 2.26.1 is a valid enforceable liquidated damages provision. The provision fixed damages in an amount that was a reasonable forecast for the harm caused by the breach and the harm is of a kind difficult to accurately estimate. The Court also finds that the State's request for injunctive relief to require Prudential to perform contract requirements is moot as Prudential no longer provides Medicaid services for the State.
Accordingly,
IT IS HEREBY ORDERED that defendant's motion for partial summary judgment [# 23] is granted.